NATIONAL BANK OF COMMERCE *v.* DOWNIE, TRUSTEE.

SEATTLE NATIONAL BANK *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

Nos. 31, 32.  Argued November 3, 1910.—Decided November 28, 1910.

The prohibition of § 3477, Rev. Stat., against assignment of claims against the United States which have not been allowed and warrant issued therefor is of universal application. It covers all unallowed claims and all voluntary assignments thereof, including assignments made in good faith, as security for advances in course of business, of undisputed claims on contracts being performed by the assignor; and *held*, that assignments of such claims so made by a bankrupt are null and void, not only as against the United States but also as against other creditors, and the claims pass by operation of law to the trustee in bankruptcy.

Section 3477, Rev. Stat., does not embrace the transfer of unallowed claims against the United States when the transfer is by operation of law and not voluntary.

To hold that an act making all assignments of claims against the Government null and void does not embrace claims and assignments of the nature of those involved in this action would effect a repeal of the statute by judicial legislation in disregard of its plain intent.

THE facts, which involve the validity of transfers of unallowed claims against the United States, are stated in the opinion.

*Mr. George E. De Steiguer,* with whom *Mr. Frederick Bausman* and *Mr. Daniel Kelleher* were on the brief, for appellants:

The trustee in bankruptcy is not entitled to claim and hold the proceeds of the claims pledged to appellants in

disregard of the lien which they claim thereon. Sections 67*d*, 70*a* of Bankruptcy Act.

Section 67*d* applies to purely equitable liens, as well as to liens created by statute and common-law liens. *Chattanooga Bank* v. *Rome Iron Co.*, 102 Fed. Rep. 755; *McDonald* v. *Daskam*, 116 Fed. Rep. 276; *Re Elm Brewing Co.*, 132 Fed. Rep. 299.

An engagement to devote a certain fund to the satisfaction of a claim constitutes an equitable lien. *Walker* v. *Brown*, 165 U. S. 654; 3 Pomeroy, Eq. Jur., § 1235.

Section 3477, Rev. Stat., does not prevent appellants from asserting their liens upon the bankrupt's claims against the United States; nor did these claims pass absolutely to the trustee in bankruptcy for the benefit of general creditors in disregard of such lien.

The purpose of that section is limited to the protection of the Government; the statute concerns disputed claims only, and if applicable at all to assignments of undisputed commercial debts due from the United States, given in the ordinary course of business, as collateral security for mercantile loans, it is not intended to affect, and does not affect, rights to the proceeds of such claims as between the assignee and the assignor or his representatives.

As construed below, a contractor to whom the Federal Government may be indebted a million dollars on undisputed bills for materials furnished is unable to borrow a thousand dollars on the pledge of his expectations.

By such a construction competition for government contracts is limited to those few contracting firms who can complete their work out of their own capital, and who do not need to have recourse to the credit and banking privileges upon which ninety-five per cent of the business of the country is conducted.

This court has repeatedly and wisely held that notwithstanding the broad and comprehensive language of the act, it should be given application only to such cases as fall within its purpose. *Bailey* v. *United States,* 109 U. S. 432; *Goodman* v. *Niblack,* 102 U. S. 556.

Public policy, for the purpose of this statute, does not forbid the giving of liens on payments due from the Government, as between government contractors and their bankers.

As to the history of § 3477, see 9 Stat. 4; Sen. Rep. No. 1, 33d Cong., Sp. Sess. 1853, Vol. 1; C. 81, act of February, 1853, 10 Stat. 170; Debates in Congress, pp. 64, 67, and 216 App. Cong. Globe, Vol. 2, 2d Sess., 32d Cong. 1852–53; Circular for the guidance of the officials of the Government in which First Comptroller announced that the act of 1853 does not include undisputed claims; *Freedmen's Savings & Trust Co.* v. *Shepherd,* 127 U. S. 494; 17 Op. Atty. Gen. 545; 21 Op. Atty. Gen. 75; 12 Op. Atty. Gen. 216. This statute was aimed at evils of the nature of champerty and maintenance, as supported by many expressions of this court; that is the only construction with which all previous decisions of this court can be reconciled. *Marshall* v. *Railroad Co.,* 16 How. 336; *Freedmen's Savings & Trust Co.* v. *Shepherd,* 127 U. S. 494; *Ball* v. *Halsell,* 161 U. S. 72; *Goodman* v. *Niblack,* 102 U. S. 556, 560; *Price* v. *Forrest,* 173 U. S. 410; *Dowell* v. *Caldwell,* 4 Sawy. 217; Fed. Cas. No. 4039.

If the statute be held to apply to undisputed claims, it renders such assignments not void for all purposes but only void or voidable so far as the United States is concerned. It does not apply at all to mere pledges or assignments as security for mercantile loans.

While the act forbids the assignment of "any interest" in such claims, the interest referred to is a share or percentage in an expectancy—a part interest in a disputed demand. It is obvious that the equitable pledge of un-

disputed demands as security for mercantile loans is not referred to by the words "assignments of any interest therein." See *Spofford* v. *Kirk*, 97 U. S. 484; *United States* v. *Gillis*, 95 U. S. 407; *Erwin* v. *United States*, 97 U. S. 392; *Goodman* v. *Niblack*, 102 U. S. 556; *Ball* v. *Halsell*, 161 U. S. 72; *Freedmen's Savings & Trust Co.* v. *Shepherd*, 127 U. S. 494; *Hobbs* v. *McLean*, 117 U. S. 567; *St. Paul & Duluth R. R. Co.* v. *United States*, 112 U. S. 733; *Bailey* v. *United States*, 109 U. S. 432; *Price* v. *Forrest*, 173 U. S. 410; *Nutt* v. *Knut*, 200 U. S. 12.

See also state court decisions of Massachusetts, Mississippi, New York and Virginia, holding the statute inapplicable to such a case as that now before the court. *Yorke* v. *Conde*, 147 N. Y. 486; *In re Home*, 153 N. Y. 528; *Jernegan* v. *Osborne*, 155 Massachusetts, 207; *Thayer* v. *Pressey*, 175 Massachusetts, 233; *Fewell* v. *Surety Co.* (Miss.), 28 So. Rep. 755; *Howes* v. *Trigg* (Va., 1909), 65 S. E. Rep. 538.

The interests of the Government are amply protected by its own unquestioned right, even at common law, to disregard the assignment. *United States* v. *Robeson*, 9 Pet. 319; *Bonner* v. *United States*, 9 Wall. 156.

The appellants are neither plaintiffs nor defendants in any suit at law or in equity. They are claimants and petitioners seeking the allowance of their equitable rights in a fund in a bankruptcy court.

A bankruptcy court in administering an estate should regard and protect equitable liens and rights, even such as might not be enforceable by suit in law or equity. *In re Chase*, 124 Fed. Rep. 753, 755; *Hurley* v. *Atchison, T. & S. F. Ry. Co.*, 213 U. S. 126.

*Mr. J. E. Horan*, with whom *Mr. H. D. Cooley, Mr. W. A. Peters, Mr. J. H. Powell* and *Mr. Harold Preston* were on the brief, for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

There is no dispute as to the facts out of which the present controversy has arisen. Substantially the facts are these: On the sixteenth day of April, 1907, the appellee Downie was appointed receiver ·of the property of Gam-well & Wheeler, partners, who had previously, on the same day, been adjudged bankrupts. Subsequently he was elected and qualified as permanent trustee, and by order of the court, June 20th, 1907, was authorized to collect all moneys due the bankrupts *from the United States or any of its departments.*

Gamwell & Wheeler, as a firm, held sixteen unallowed claims *against the United· States,* aggregating $33,517.48, the first one being dated December 10th, 1906, and the last February 15th, 1907. The National Bank of Commerce of Seattle was a creditor of that firm in the sum of $37,149.85. These claims were all assigned by Gamwell & Wheeler to the above bank. The Seattle National Bank was likewise a creditor of the firm and to the extent of $22,582.19, with interest, and that firm held certain un-allowed claims against the United States, sixty-one in number, and amounting to $38,509.32. The first of the latter claims was dated September 25th, 1906, and the last April 4th, 1907. They were all assigned by Gamwell & Wheeler to the last-named bank.

The parties, by stipulation ·of July 10th, 1907, agreed: "That each and all of ·said claims against the United States Government, so assigned, [to the banks named] were claims for money due from the Government of the United States to the said bankrupt upon account of con-tracts entered into between said bankrupts and the United States for the furnishing of materials by said bankrupts to various departments of said Government; that said assignments were each and all. voluntarily made in con-sideration of a loan made by said bank to said bankrupts

at the time of said assignments and as collateral security
for the repayment of said loans, and without notice to
the other creditors of said bankrupts. That all of such
assignments were made after the entering into of' said
contracts and after partial performance thereof by said
bankrupts before the allowance of any such claims or the
ascertainment of the amount due thereon, or the issuing
of any warrant for the payment thereof, and that none of
said assignments were executed in the presence of any
witnesses at all, and that none of them recite any warrant
for the payment of the claim assigned, and that none of
them were acknowledged by any officer having authority
to take acknowledgment of deeds, or any other acknowl-
edging officer at all, and that none of them were certified
as being acknowledged by any officer. The said loans
to wit of said banks exceeded in amount the value of said
collaterals so assigned to secure the same, and there is
now due to each of said banks on account of said loans
an amount much in excess of the value of the said
collaterals so assigned to each of said banks respec-
tively."

The claims of the two banks ($37,149.85 and $22,582.19
with interest) were allowed by the Referee in Bankruptcy,
and it was adjudged by the court that the banks were
entitled, respectively, to receive, on account of the claims
assigned to them, whatever amount might be collected
on them from the Government, and the Trustee was or-
dered to pay over to the banks holding the assignments
the collections as they were made thereon.

The District Court allowed the respective claims of
the banks as general debts, but disallowed them as pre-
ferred. This order was affirmed in the Circuit Court of
Appeals, that court rejecting the claim of each bank for
a lien upon the fund assigned. The case is here under a
certificate by Justice Brewer, to the effect that the de-
termination of the question involved in each case was

essential to an uniform construction of the Bankruptcy Act throughout the United States.

The questions raised by the parties make it necessary to determine the scope and effect of § 3477 of the Revised Statutes in its application to these cases. That section was brought forward from previous acts of Congress and is as follows: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

The words of that section are so clear and explicit that there cannot be, we think, any reasonable ground to doubt the purpose of this legislation. Its essential features are not new, as can be seen by an examination of the act of Congress of July 29th, 1846, "in relation to the payment of Claims" on the United States, and the act of February 26th, 1853, "to prevent frauds upon the Treasury of the United States." 9 Stat. 41, c. 66; 10 Stat. 170, c. 81. Turning to § 3477, we find Congress had in mind not only *all* transfers and assignments of *any* claim on the United States or part of a claim or *any interest therein,* whether

the transfer or assignment be absolute or unconditional and *whatever was the consideration of the transfer or assignment,* but all powers of attorney, orders or other authorities for receiving payment of any such claim, or *of any part or share thereof.* All such transfers, assignments, powers of attorney, order or authorities are declared to be "absolutely null and void," except there be a compliance with the conditions fully set out in the statute. None of those conditions was complied with in these cases.

In *United States* v. *Gillis,* 95 U. S. 407, 416, it appears that suit was brought in the Court of Claims, by the assignee of an unallowed claim on the United States, and the question arose whether the assignee could maintain a suit in his name for the proceeds of the claim. The Court of Claims sustained the assignee's right to sue, but this court, upon careful examination of the act of 1853, reënacted in § 3477 of the Revised Statutes, reversed the judgment and directed the petition of the assignee to be dismissed. It was contended in that case that the act of 1853 had reference only to claims asserted before the Treasury Department. But that view was rejected. After observing that the comprehensive provisions of the statute excluded any exceptions to the rule presented, the court said: "We think, therefore, the act of 1853 is of universal application, and covers *all* claims against the United States *in every tribunal in which they may be asserted.* And such, we think, was the understanding of Congress when the Revised Statutes were enacted. In the revision, the act of 1853 was included and reënacted."

Among the earlier cases on the general subject is *Spofford* v. *Kirk,* 97 U. S. 484, 488–489, 490, frequently referred to in later decisions and always followed.

That was a case of a suit by Spofford, in the Supreme Court of this District. He became the holder, by assign-

ment, of certain acceptances which, upon their face, provided for payment to be made out of any moneys received from the United States on the claim of one Kirk *against the Government*. The assignee or holder of the acceptances paid value for them and acted in entire good faith. The question was whether an assignment of a claim against the United States, made before the claim had been allowed and before a warrant had been issued for its payment, had *any validity, either in law or in equity*. The court of original jurisdiction dismissed Spofford's bill, and the judgment was affirmed here. Mr. Justice Strong, speaking for this court, referred to § 3477 of the Revised Statutes, and, among other things, said: "It would seem to be impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof. It strikes at every derivative interest, in whatever form acquired, and *incapacitates every claimant upon the Government from creating an interest in the claim in any other than himself*." After referring to the fact that the court had not been called upon to decide in the *Gillis case*, whether the assignment there involved was invalid as between the assignor and the assignee, the opinion proceeds: "But if after the claim in this case was allowed, and a warrant for its payment was issued in the claimant's name, as it must have been, he had gone to the treasury for his money, it is clear that *no assignment he might have made, or order he might have given, before the allowance would have stood in the way of his receiving the whole sum allowed*. The United States must have treated as a nullity any rights to the claim asserted by others. It is hard to see how a transfer of a debt can be of no force as between the transferee and the debtor, and yet effective as between the creditor and his assignee to transmit an ownership of the debt, or create a lien upon it. Yet if

that might be—and we do not propose now to affirm or deny it—the question remains, whether the act of Congress was not intended to render *all* claims against the government, *inalienable alike in law and in equity, for every purpose, and between all parties.* The intention of Congress must be discovered in the act itself. . . . We cannot say, when the statute declares all transfers and assignments of the whole of a claim, or any part or interest therein, and all orders, powers of attorney, or other authority for receiving payment of the claim, or any part thereof, shall be absolutely null and void, that they are only partially null and void, that they are valid and effective as between the parties thereto, and only invalid when set up against the government. It follows that, in our opinion, the accepted orders under which the appellant claims gave him no interest in the claim of the drawer against the United States, and no lien upon the fund arising out of the claim. His bill was, therefore, rightly dismissed."

In *St. Paul & Duluth R. R. Co.* v. *United States,* 112 U. S. 733, 736, the court held that a voluntary transfer by mortgage, for the security of a debt, and finally completed and made absolute by a judicial sale, was within the prohibition of § 3477, Mr. Justice Matthews, speaking for the court, saying that "if the statute does not apply to such cases, it would be difficult to draw a line of exclusion which leaves any place for the operation of the prohibition."

The latest adjudication, by this court, construing § 3477 of the Revised Statutes, is that of *Nutt* v. *Knut,* 200 U. S. 12, 13, 14, 20. That case involved, among other things, the validity of the clause in a written contract relating to compensation to be made to an attorney employed to prosecute a claim against the United States. The contract provided that the payment of such compensation "is hereby made a *lien* upon said claim and upon any

draft, money or ·evidence.of indebtedness which may bo issued thereon. This agreement. not to be affected by any services performed by the claimant, or by any other agents or attorneys employed by him." After referring to the words of § 3477 and citing previous cases in which the scope and meaning of that section were considered (which cases are given in the margin [1]), this court said: "If regard be had to the words as well as to the meaning of the statute, as declared in former cases, it would seem clear that the contract in question was, in some important particulars, null and void upon its face. We have in mind. that clause making the payment of the attorney's compensation a *lien* upon the claim asserted against the Government and upon any draft, money or evidence of indebtedness issued thereon. In giving that lien from the outset, before the allowance of the claim and before any service had been rendered by the attorney, the contract, in effect, gave him an interest or share ·in the claim itself and in any evidence of indebtedness issued by the Government on account of it.. In effect or by its operation it transferred or assigned to the attorney in advance of the allowance of the claim such an interest as would secure the payment of the fee stipulated to be paid. All this was contrary to the statute; for its obvious purpose, in part, was to forbid any one who was a stranger to the original transaction to come between the claimant and the Government, prior to ·the allowance of a claim, and who, in asserting his own- interest or share in the claim, pending its examination, might embarrass the conduct · of the business on the part of the officers of the Govern-

---

[1] *Spofford* v. *Kirk*, 97 U. S. 484; *United States* v. *Gillis*, 95 U. S. 407; *Erwin* v. *United \States*, 97 U. S. 392; *Goodman* v. *Niblack*, 102 U. S. 556; *Ball* v. *Halsell*, 161 U. S. 72; *Freedmen's Saving Co.*. v. *Shepherd*, 127 U. S. 494; *Hobbs* v. *McLean*, 117 U. S. 567; *St. Paul & Duluth R. R.* v. *United States*, 112 U. S..733; *Bailey* v. *United States*,.109 ·U. S. 432; *Price* v. *Forrest*, 173 U. S. 410.

.ment. We are of opinion that the state court .erred in holding the contract, on its face, to be consistent with the statute."

In this connection, it must be said- that this court has held that the statute in question does not embrace the transfer of a claim against the United States, where the transfer has been by operation of law, not merely as the result of a voluntary assignment by the claimant. In *Erwin* v. *United States*, 97 U. S. 392, 397, this court, speaking by Mr. Justice Field, after referring to the act of 1853 embodied now in § 3477 of the Revised Statutes, to prevent frauds upon the Treasury, said that it "applies only to cases of voluntary assignment of demands against the Government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims." This construction of the statute was recognized as settled law in *Goodman* v. *Niblack*, 102 U. S. 556, 560; *St. Paul Railroad* v. *United States*, 112 U..S. 733, 736; *Butler* v. *Goreley*, 146 U. S. 303, 311; *Hager* v. *Swayne*, 149 U. S. 242, 247, and *Ball* v. *Halsell*, 161 U. S. 72, 79.

The present cases are not assignments which by operation of law created an interest in the assignor's claims against the United States. They are clean-cut cases of a voluntary transfer of claims against the United States, before their allowance, in direct opposition to the statute. If any regard whatever is to be had to the intention of Congress, as manifested by its words—too clear, we think, to need construction—we must hold such a transfer to be absolutely null and void, and as not in itself, passing to the appellants any interest, present or remote, legal or equitable, in the claims transferred. The result is that when Gamwell & Wheeler were adjudged bankrupts they

were *still in law the owners of these claims on the United States*, and all interest therein passed under the bankrupt act to their general creditors, to be disposed of as directed by the bankrupt act, just as if there had been no attempt to transfer them to the banks. Any other holding will effect a repeal of the statute by mere judicial construction in disregard of the plain, unequivocal intent of Congress as indicated by the statute.

The judgment as to each bank is

*Affirmed.*