GUARANTEE TITLE & TRUST CO. v. FIRST NAT. BANK OF HUNTINGDON, PA., et al.

FIRST NAT. BANK OF HUNTINGDON, PA., v. GUARANTEE TITLE & TRUST CO.

(Circuit Court of Appeals, Third Circuit. February 24, 1911.)

Nos. 67, 68 (1,439).

1. SALES (§§ 82, 161, 202*)—CONSTRUCTION OF CONTRACT—PAYMENT.

A contract for the sale of goods, "price, $1,160 f. o. b. cars, Detroit, Mich.," and naming the carrier to which delivery was to be made, construed in accordance with commercial usage, required payment of the price on such delivery, or, if required, after the lapse of a reasonable time for inspection before acceptance, during which time neither title nor possession passed to the purchaser.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 229-233, 377-380, 542-551; Dec. Dig. §§ 82, 161, 202.*]

2. SALES (§ 202*)—PASSING OF TITLE—WAIVER OF CONDITIONS.

Where a car was built for a purchaser under a contract which required payment of the price on delivery, but delivery was made without insisting on such condition, and the purchaser retained possession without objection for six months and until its bankruptcy, such condition was waived, and title passed to the purchaser, and the seller could not avoid the effect of the waiver by sending an invoice to the purchaser after delivery, stating that title was reserved until full payment was made; there being no evidence that the purchaser agreed to such change in the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 542-551; Dec. Dig. § 202.*]

8. BANKRUPTCY (§ 188*)—PLEDGE OF PROPERTY—VALIDITY.

The bankrupt, an iron company, having contracted to build and equip a steel derrick car, gave an assignment of its account therefor, "and the goods covered by and described therein," to claimant bank as collateral for a loan, and the purchaser at its request wrote the bank, agreeing to pay whatever should be due for the car, on its delivery and acceptance, to the bank. The car was delivered, but refused by the purchaser for noncompliance with the contract, and remained in possession of a railroad company until after the bankruptcy, when it was replevied by the bank. Held, that the assignment did not constitute a pledge of the car, good under the Pennsylvania rule making transfer of possession necessary to the validity of a pledge, and that title to the car passed to the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

4. BANKRUPTCY (§ 172*)—CLAIMS AGAINST UNITED STATES—ASSIGNMENT.

An assignment of a claim against the United States for money due under a contract is void to transfer the claim, as against the trustee in bankruptcy of the assignor, unless executed with the formalities required by Rev. St. § 3477 (U. S. Comp. St. 1901, p. 2320), and unless the claim has been previously allowed and a warrant issued for its payment, which is essential to its assignability under said section.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of the Pittsburgh Industrial Iron Works, bankrupt. From an order sustaining the claim of the American Car & Foundry Company to a derrick car, and a lien in favor of the First National Bank of Huntingdon, Pa., on the equipment thereof (179 Fed. 151), the Guarantee Title & Trust Company, trustee, appeals. Reversed. From an order holding invalid an assignment to the bank of a claim against the United States, the bank appeals. Affirmed.

H. V. Blaxter, for First Nat. Bank of Huntingdon.

R. T. M. McCready, for Guarantee Title & Trust Co.

S. S. Mehard, for American Car & Foundry Co.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. These are appeals from a final order and decree of the District Court of the United States for the Western District of Pennsylvania, in bankruptcy, in a controversy between a trustee in bankruptcy and two adverse claimants. In re Pittsburgh Industrial Iron Works, 179 Fed. 151.

By virtue of proceedings begun in involuntary bankruptcy, November 9, 1907, the above named Pittsburgh Industrial Iron Works was adjudicated a bankrupt. A receiver was duly appointed November 14, 1907, and thereafter the Guarantee Title & Trust Company, party to these appeals, was duly elected trustee of the bankrupt's estate. On December 19, 1907, a petition was filed in the said court by the First National Bank, of Huntingdon, Pa., one of the parties to these appeals, setting forth a certain contract between the petitioner and the bankrupt, dated March 6, 1907, more than four months before the commencement of the proceedings in bankruptcy, by which the said bankrupt assigned, transferred and set over to the petitioner a certain invoice or account for goods theretofore sold by the bankrupt to the Detroit River Tunnel Company, and the goods covered by the said account, in consideration of and as collateral security for the discount of a note given by the bankrupt to said petitioner, the proceeds of which, $5,125, were received by the said bankrupt. It also set forth that, in consideration of and collateral to the discount of another promissory note by it, the said bankrupt assigned to the petitioner the proceeds of a certain contract between the bankrupt and the United States Navy Department.

The petitioner thereupon prayed that the receiver should surrender to it any rights he may claim to the goods or proceeds of the said contract with the Detroit River Tunnel Company, and also the proceeds of the said contract with the said United States Navy Department, when and as collected by said receiver. Upon this petition, a rule was granted upon said receiver to show cause why he should not comply with the prayer of said petition. Thereafter, at some date not known and as to which no docket entry is disclosed by the record, it is admitted that the American Car & Foundry Company had duly intervened in these proceedings, by claiming a vendor's lien upon a certain car sold and delivered to the bankrupt, being part of the property claimed by the First National Bank, of Huntingdon, to have been assigned to

it for collateral security, as aforesaid. The controversy between these interveners and between each of them and the trustee, was heard by the court below and a decree entered in favor of the American Car & Foundry Company, for the value of the car sold and delivered by it to the bankrupt and in favor of the First National Bank, of Huntingdon, Pa., for the machinery and equipment placed upon said car by the bankrupt. The court also ordered and decreed against the said bank as to its claim for the proceeds of the contract between the bankrupt and the Navy Department, and sustained the claim of the trustee to retain the said proceeds in his hands for the benefit of the creditors of the bankrupt estate.

The agreed statement of facts, upon which the case was heard and determined below, is contained in the record, and, so far as material for our present purpose, is as follows:

"1. Prior to January 1, 1907, the Pittsburgh Industrial Iron Works (the bankrupt) contracted with the Detroit River Tunnel Company to furnish it a certain steel derrick car and equipment.

"2. That thereafter, to wit, on or about March 26, 1907, while said Pittsburgh Industrial Iron Works were engaged in the manufacture and erection of said equipment, it procured the discount by the First National Bank of Huntingdon of its promissory note for $5,125, and received the sum of $5,125 as the proceeds thereof.

"3. That at the time of the discounting of the said note and in consideration thereof, said Pittsburgh Industrial Iron Works executed and delivered to the said First National Bank of Huntingdon an assignment in terms shown by 'Exhibit B' of the petition in this case.

"4. That on March 6, 1907, the said Pittsburgh Industrial Iron Works, having arranged for the discount of said note gave to said Detroit River Tunnel Company notice in writing in the following terms:

" 'March 6, 1907.

" 'Detroit River Tunnel Co., Detroit, Mich.—Gentlemen: For financial convenience we have arranged with the First National Bank, Huntingdon, Pa., to cash the invoice mailed to you, amounting to $5,125.00, kindly make remittance to them. You understand your compliance incurs no liability whatever, you simply settle with the bank instead of us. We enclose you form of reply, which please mail to them in stamped envelope herewith. Thanking you in advance for the courtesy, we are,

" 'Yours truly,                                        President.'

"5. That on March 20, 1907, said Tunnel Company wrote the said bank in the following terms:

" 'Detroit, Mich., March 20, 1907.

" 'First National Bank, Huntingdon, Pa.—Gentlemen: We have received a letter from the Pittsburgh Industrial Iron Works, dated March 6th, and asking us to pay you what may be due them for a derrick car which they have been building for us. After the car has been received, tested and accepted, we will pay you whatever may be due them for it.

" 'Yours truly,                               [Signed]  Benjamin Douglass.'

"6. That on April 3, 1907, the said derrick and equipment were tendered to the Detroit River Tunnel Company at Detroit and were in their possession, although unaccepted and uncompleted, until May 10, 1907, when said car and equipment were refused, because not in accordance with specifications, and were on May 17, 1907, reshipped to the Pittsburgh Industrial Iron Works.

"7. That from May 17, 1907, to August 15, 1907, said derrick was in the possession of the Pittsburgh Industrial Works, was altered and tested divers times, said tests being made from time to time by employés of the Detroit River Tunnel Company.

"8. That on August 15, 1907, the derrick car was again shipped by said Pittsburgh Industrial Iron Works via the Pennsylvania Railroad to Detroit and then and there set up by the said Pittsburgh Industrial Iron Works and

again tendered to said Tunnel Company and by it refused as not according to contract. The Pittsburgh Industrial Iron Works then proposed and undertook various changes to meet the requirements of the contract with the Tunnel Company, but (as it admitted for the purposes of this case only) did not meet the requirements of the contract under which said derrick car was built; and, therefore, said car was finally and lawfully refused on October 28, 1907, by notice from said Tunnel Company to said Pittsburgh Industrial Iron Works.

"9. That the First National Bank of Huntingdon was aware of the insolvency of the said Pittsburgh Industrial Iron Works on November 1, 1907, and on November 7, 1907, at a meeting of its directors, adopted the following resolution: 'On motion John D. Davis was instructed as attorney for the bank to take the necessary steps to protect our ownership of the Detroit River Tunnel Company rig.'

"10. That on November 25, 1907, Messrs. Gray & Gray, attorneys at law, of Detroit, were retained by said bank in the matter of said claim, under letter of ———, a copy of which is hereto attached and made part hereof, marked 'Exhibit A.'

"11. That on January 17, 1908, said derrick car and equipment which had remained in Detroit at all times since August, 1907, held by the Michigan Central Railroad Company, was seized by writ of replevin issued on behalf of said bank against said railroad company.

"12. That American Car & Foundry Company of St. Louis, Mo., has intervened as respondents and claims to be the owner, or at least to have a lien on the said car, which claim is based upon the following facts:

" 'That after preliminary negotiations, the Pittsburgh Industrial Iron Works offered to said American Car & Foundry Company the following order, to wit:
" 'Pittsburgh, Pa., Sept. 4, 1906.

" 'American Car & Foundry Co., St. Louis, Mo. Attention Mr. W. J. McBride.—D3741. Gentlemen: In further reply to your favor under date of August 25th, you will kindly enter our order for one 100,000# capacity P. R. R. type F. M. steel flat car to be built under the following specifications,' &c., &c.  *  *  *  Price, eleven hundred sixty ($1,160.00) dollars, f. o. b. cars Detroit, Mich. We trust you will be able to make delivery in October, and in making shipment kindly consign to us at Reynoldsville, Jefferson Co., Pa., via P. R. R.'

"That said offer was accepted by American Car & Foundry Company and pursuant to the contract thus made said company proceeded to construct the said car according to the specifications contained in the said order, and when the said car was completed, to wit, on or about March 13, 1907, said American Car & Foundry Company made shipment thereof from their Peninsular Plant in accordance with said order of September 4, 1906, and notified Pittsburgh Industrial Iron Works of such shipment by writing in the following terms, to wit:
" 'March 22, 1907.

" 'Mr. J. S. Beckwith, Sec. Pittsburgh Industrial Iron Works, Pittsburgh, Pa.—Dear Sir: Enclosed we beg to hand you our invoice in triplicate, dated March 13th, covering one flat car lettered 'Detroit River Tunnel Co., Detroit, Mich.' $1,160.00. This car was shipped from our Peninsular Plant, to apply on contract dated Sept. 4, 1906.
Yours truly,                                        S. S. D. Land, Treasurer.'
                      "Enclosure.

" 'St. Louis, Mo., Mar. 13, 1907.
" 'Pittsburgh Industrial Iron Works, Mr. J. S. Beckwith, Sec'y and Treas., Pittsburgh, Pa. To American Car & Foundry Company, Dr. Title to property in this invoice reserved in Car Company until full payment made. For 1—40' 100,000# capacity F. M. Flat Car lettered 'Detroit River Tunnel Company, Detroit, Mich.' $1,160.00. F. o. b. our works. Shipped from Peninsular Plant. Terms: Cash. Contract: Sept. 4, 1906.'

"That said Pittsburgh Industrial Iron Works obtained possession of said car under said shipment at Reynoldsville, Jefferson County, Pa., without paying the price agreed upon therefor, to wit, $1,160, or any part thereof, the

whole of which sum is still unpaid and is owing by said Pittsburgh Industrial Iron Works to said American Car & Foundry Company.

"13. That subsequent to the delivery of said car by the American Car & Foundry Company to the Pittsburgh Industrial Iron Works, the latter company equipped said car with boilers, engine and derrick, which it attached thereto under said contract with Detroit River Tunnel Company, as hereinbefore set forth; said equipment having been substantially completed on or about April 3, 1907.

"14. That the American Car & Foundry Company did not consent to or in any way sanction the transactions between the Pittsburgh Industrial Iron Works and the First National Bank of Huntingdon with respect to said car, as set forth in the foregoing statement of facts."

This agreed statement of facts is deficient in some particulars, which might have thrown a useful light upon the questions involved. But the court below was compelled, as we now are, to deal with the facts as they have been stated.

In regard to the claim presented by the intervention of the American Car & Foundry Company, the court below found in favor of that company, on the ground, as stated in its opinion, that the twelfth stipulation of fact shows that the price of the car was to be $1,160, f. o. b. cars Detroit, Mich., consigned to bankrupt at Reynoldsville, via P. R. R.; that "there is nothing to show that any time for payment in the future was contemplated, and the price $1,160 f. o. b. cars, Detroit, Mich., convincingly bear the interpretation that the price was to be paid on delivery of the goods sold to the carrier, at Detroit"; that this interpretation is "strengthened by the conduct of the vendor when the car was delivered to the carrier at Detroit, for at that time, March 13, 1907, they made the invoice in triplicate, one of which was mailed to the vendee, which invoice contained the words, as we have seen, 'Terms: Cash' and 'Title to the property in this invoice reserved in Car Company until full payment made'"; that this "shows conclusively that the sale was for cash, that the car was to be delivered with the express condition that the terms were cash, and that title would remain in the Car Company until the price was paid"; and that therefore title never passed to the vendee.

Our trouble is not with the law, but with its application to such a contract, as is stated by the learned judge of the court below. The deficiency above alluded to of the agreed statement was doubtless as embarrassing to the court below as it is to us. We have nothing, as was said by the learned judge of that court, but the written order from the bankrupt to the Car Company, containing the words:

"Price, eleven hundred sixty ($1,160.00) dollars, f. o. b. cars Detroit, Mich."

We agree with him that these brief words in accord with commercial usage should be interpreted as meaning that the price, $1,160, was to be paid by the vendee upon delivery of the goods on the cars of the carrier at Detroit. In other words, that the terms were cash on delivery, and that the delivery was to be to a named carrier at Detroit. The giving of such an order by the vendee, and its acceptance by the vendor, is the contract between the parties—the terms upon which their minds met. This written contract was concluded presumably in September, 1906. The car was delivered, as stipulated, by the Car Company f. o. b. cars at Detroit, about March 13th, and up to that time

no condition or modification is attempted to be shown as imported into the contract as originally made. On March 22, 1907, however, nine days after the actual shipment, the Car Company, in a letter of that date addressed to the vendee at Pittsburgh, Pa., inclosed an invoice dated March 13, 1907, as set out in the twelfth stipulation of fact. This contained the words.:

"To American Car & Foundry Co., Dr. Title to property in this invoice reserved in Car Company until full payment made."

This letter, as we have observed, is dated nine days after the car was shipped at Detroit, and must have been received by the vendee not less than ten days thereafter. It would seem clear that, as to this proposed condition, the minds of the parties did not meet. Clearly the vendor could not impose upon the vendee, without its consent, a new condition which changed entirely the character of the contract made six months before between the parties. The original contract had a distinct legal character of its own, and we venture to think the learned judge of the court below was led into error by supposing that the attempted reservation of title until the payment of price, written into the invoice, only emphasized and explained the terms of the original contract. .

Assuming, as we must, that the terms of the original contract were cash on delivery, the vendor had under it the right to insist either upon payment concurrently with the delivery, or as the largest extension of the terms that the vendee should have, if required, only a reasonable time for inspection before acceptance. These rights may, of course, be waived by the vendor, either expressly or by implication, and they are so waived by implication when they are not claimed or insisted upon at the time of delivery. The foregoing, we think correctly, at least for the purposes of this case, states the law of such a contract. Its character is very different from that of a contract of conditional sale. The possession required by the vendee for the purposes of examination, has none of the legal attributes of the vendee's possession of the property sold under a conditional sale. The vendor has in reality parted with neither legal title nor legal possession. The possession given to the vendee would be better characterized as an opportunity of inspection akin to the handing over by a vendor of a chattel sold for cash into the hand of the vendee for inspection, which is in no sense a legal delivery of possession. No interest of third parties, creditors of the vendee or others, could acquire any possible interest in the property while thus in the hands of the vendee for inspection. In a conditional sale, however, the vendor parts with possession as one of the elements of his ownership, by virtue of his contract, but expressly reserves the legal title until the price of the thing sold is paid, or until the happening of some other event stipulated for. No right of the vendor to assert his title is waived by the delivery of the possession under the very terms of the contract. As long as the price remains unpaid, or other condition unperformed, the vendor's title remains secure in him. It is into a contract of this class that the Car Company now seeks to change the original contract, the only contract in which the minds of the parties met.

We look in vain in the agreed facts for anything to warrant the conclusion that the parties to the contract had ever agreed to such change. On the contrary, the salient facts appear to be that the Car Company delivered the car it was constructing for the bankrupt f. o. b. the cars at Detroit, without any demand of payment from the vendee, either precedent to or concurrent with said delivery. The car was delivered to the vendee, who retained it in his possession for six months and until his bankruptcy, without demand or protest from the vendor. The vendor, therefore, undoubtedly waived or abandoned the conditions in his favor inherent in a contract for sale for cash on delivery, by parting with title and possession without payment. Having done so, was it in the power of the vendor to change the original contract into one of conditional sale, by the insertion of the words above quoted in the invoice transmitted nine days after the shipment, and thus avoid the effect of the waiver of the terms of the original contract in its favor? We think not. There is no pretense that the words inserted in the invoice after the shipment were ever assented to by the vendee. If the minds of the parties had met in this respect, we would have had, instead of a contract that contemplated a transfer of title and possession at the time of delivery, one which contemplated a severance of these two elements of ownership, possession being in the vendee while title remained in the vendor, their union to depend upon the occurrence of an indefinitely deferred event. The learned judge of the court below does not, however, rest his conclusion on the ground that there was a change wrought in the original contract by the insertion of these unassented to words in the invoice. He only refers to them as throwing light upon the intention of the parties in the making of the original contract. In this he is logical. The following language in his opinion clearly states the ground upon which he proceeds:

"There is nothing in the contract to show that the title to the car was reserved, unless the words in this contract, 'Price eleven hundred sixty ($1,160.00) dollars, f. o. b. cars Detroit, Michigan,' are to be construed as meaning cash on delivery of car at Detroit to the carrier, and unless it follows from this inference that a sale for cash on delivery is a conditional sale, the title remaining in the vendor as against the vendee."

But a sale upon the terms of cash on delivery is a conditional sale only in the sense in which we have already described it. The title remains in the vendor until delivery, and delivery cannot be demanded until the precedent condition of payment is performed. The vendor's lien for the price in such sales can only continue as long as actual or symbolic possession is retained by the vendor, or a right of reclamation, as hereinafter explained, exists for his protection. Standing, then, on the unmodified original contract it seems a necessary conclusion that, when the inherent and characteristic condition of payment before, or concurrently with, delivery is abandoned, title accompanies delivery of possession to the vendee, a right of action for the price remaining in the vendor. It is hardly necessary to add that delivery to the agreed upon carrier in this case was delivery to the vendee. We must not be confused by cases where documentary symbols of possession and ownership are retained by the vendor after delivery of the goods to the carrier. By such delivery, the vendor has not surrendered

his lien as long as he retains the bills of lading or other documents representing the goods, in his own control. In other words, the vendor does not lose his lien as long as he retains actual or symbolic possession of the goods. We think, therefore, under the contract of sale and the facts as set out in the agreed statement, that title to the car in question passed to the vendee, the present bankrupt.

Nor do we think the conclusion here reached is inconsistent with the doctrine of Frech v. Lewis, 218 Pa. 141, 67 Atl. 45, 11 L. R. A. (N. S.) 948, 120 Am. St. Rep. 864, and the so-called right of reclamation referred to in that case. Mr. Justice Stewart, speaking for the Supreme Court in that case with reference to contracts of sale providing for the payment of the purchase price on delivery of the articles sold, and where the seller delivers the goods but the buyer fails to pay, says:

"The right of property does not pass to the buyer with the possession, but remains with the seller, who may at his option reclaim the goods. * * * Possession, however, having passed, and the buyer by the act of the seller having been invested with the indicia of ownership, the policy of our law requires that this situation—the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right in such case to reclaim his goods, but he must do so promptly, otherwise he will be held to have waived his right and can only thereafter look to the buyer for the price. The question the present case suggests is,—when does this inference of waiver arise? Our authorities admit of but one answer; except when delayed by trick or artifice, the assertion of the right to reclaim the property must follow immediately upon the buyer's default."

We do not think this view of the law is peculiar to Pennsylvania. It is reasonable, and accords with the practical conduct of human affairs. Delivery to the buyer may conveniently be made without insisting upon the concurrent payment of the price, if this right of reclamation to be promptly and reasonably exercised, is recognized in the seller. Such possession by the buyer, however, is very different in fact and in theory from the vendee's possession which accompanies a conditional sale. It may well be that the insertion by the Car Company, of the reservation of title until payment, in the invoice, was an appeal to and assertion of this right of reclamation, for its protection, after it had surrendered the goods to the possession of the vendee without having received the payment, as stipulated in the contract of sale. But this right of reclamation, as stated in the case just referred to, must be promptly asserted, or it will be considered as waived, and the seller is remitted to his rights against the buyer as his debtor. Mackaness v. Long, 85 Pa. 158, is another recognition of the same doctrine, that, unless reclamation of the property be made immediately, the title passes to the buyer. There can be no question, therefore, in the case at bar, that this right of reclamation existing in the Car Company when it allowed the goods sold to be delivered, without the payment it had a right to demand, to the vendee, has been lost by want of assertion during the long period that elapsed between the delivery of the goods and the bankruptcy of the vendee.

The order of the court below, in regard to the claim of the American Car & Foundry Company, is therefore reversed.

Turning now to the question raised by the intervener, the First National Bank, of Huntingdon, we are compelled again reluctantly to differ from the conclusion reached by the court below.

We do not think the facts and circumstances attending the assignment by the Iron Works to the Bank of its claim or account against the Detroit Tunnel Company, "and the goods covered by or described therein," bring such assignment within the recognized class of exceptions to the Pennsylvania rule in regard to pledges of personal property without transfer of possession. The transfer to the Bank by the Iron Works of its account against the Tunnel Company, and the moneys to become due thereon, as collateral security for the bank's loan, was undoubtedly good after it was accepted by the Tunnel Company. The car at that time, it is true, was in process of manufacture, but it had been sold to the Tunnel Company and the Iron Works had no present property in it which it could transfer. After the final rejection of the car, October 28, 1907, by the Tunnel Company, no attempt was made by the Iron Works to deliver possession of the car to the Bank, nor by the bank to take possession, until January 17, 1908, when said derrick, car, and equipment, which had remained in Detroit ever since August, 1907, held by the Michigan Central Railroad Company, was seized by writ of replevin issued on behalf of the Bank against said railroad company. This, of course, was long after the adjudication of the bankruptcy of the Iron Works, on November 21, 1907. The assignment was really and substantially the assignment of the account against the Tunnel Company, and the moneys to become due thereon, as the real security to the bank for its discount. It might have been effectual as an assignment of the car, if it had provided that in case of its rejection by the Tunnel Company it should be turned over by that Company to the Bank, in which case, after the final rejection of October 28, 1907, the Tunnel Company would have held the car subject to the order of the Bank. This would have been clearly within the class of exceptions to the Pennsylvania rule making transfer of possession to the pledgee necessary to the validity of a pledge. This, however, was not the case. It was not assigned as property in the possession of a bailee. The assignment had no reference, of course, to the holding of the car by the Michigan Central Railroad Company, which occurred long afterwards, nor could the accidental situation of a car on the tracks of a railroad company serve as notice to the world that it was not in the possession of its owner. As said by the counsel for the trustee in bankruptcy:

"In the present case, the bank saw fit to rely upon the possibility that the pledged property would pass into the possession of the vendee, from whom the bank could then have recovered either the car or its purchase price."

We think no efficient assignment, legal or equitable, has been shown to take this property from the trustee, who in this case stands not only in the shoes of the bankrupt but also represents the rights of creditors against the bankrupt estate.

The order and decree of the court below, in regard to the claim of the First National Bank, of Huntingdon, Pa., to have surrendered to

it by the trustee the car and its equipment, or the value thereof, is therefor reversed.

The claim of the First National Bank, of Huntingdon, to $3,016, collected by the trustee from the United States, is founded upon the fact that the bankrupt, having contracted to furnish to the United States a certain derrick for the price of $3,016, shipped the same on September 27, 1907, and on October 16, 1907, borrowed from the bank the sum of $3,016, upon the note of the bankrupt, with its claim against the United States under said contract assigned to the bank as collateral security. The assignment is an express transfer of a "claim or account" against the United States, with power of attorney to collect the same. Section 3477 of the Revised Statutes (U. S. Comp. St. 1901, p. 2320) is as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowances of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the same time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

The court below, for the reasons stated by it, has correctly adjudged that the assignment of said claim against the United States was void as to the bankrupt, and that the money in the hands of the trustee may be retained by the trustee for distribution among the creditors in such manner as the court may thereafter determine. It is only necessary to add that the view taken by the court below has since been fully sustained by the Supreme Court of the United States in the recent case of the National Bank of Commerce, of Seattle, v. Downie, Trustee (decided November 28, 1910) 218 U. S. 345, 31 Sup. Ct. 89, 54 L. Ed. 1065.

The order and decree of the court below, in regard to the claim of the First National Bank, of Huntingdon, Pa., to the proceeds of the claim of the bankrupt against the United States, is therefore affirmed.