CASCADE COUNTY, MONT., et al. v.
UNITED STATES.

No. 993.

District Court, D. Montana,
Great Falls Division.

Feb. 25, 1948.

H. R. Eickemeyer and LaRue Smith, Jr., both of Great Falls, Mont., for plaintiffs.

John B. Tansil, U. S. Atty., and Franklin A. Lamb, Asst. U. S. Atty., both of Billings, Mont., for defendant.

BROWN, District Judge

The action is commenced under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 931. Plaintiffs allege that on August 9, 1946, in Cascade County, Montana, certain employees and officers of the United States, constituting the personnel of the United States Army Air Forces, flew three A-26 bomber type aircraft in such a negligent manner that one of them crashed into a barn, the property of the County, located on the Cascade County fairgrounds, and caused a fire which entirely destroyed the property of the County, to its damage in the sum of $18,685; that prior to the loss plaintiff County had insured all of its property, including the barn, with the plaintiff Home Insurance Company and seventy-one other insurance companies; that after the fire the insurance companies paid to the County $8,550 by reason of the loss, the amount being prorated among the various insurance companies, and alleges that by reason of the payments made to the County under the insurance policies, each of them are subrogated to the rights of the plaintiff County against the United States because of the loss and damage to the property of the County, and as such subrogees sue, the Home Insurance Company suing on behalf of itself and the other seventy-one insurance companies similarly situated. The defendant moves to dismiss as to the plaintiff Home Insurance Company, both in its individual and representative capacity, upon the grounds (a) that the Federal Tort Claims Act does not provide a remedy for a claim based upon the subrogation rights and prohibits the prosecution of such a claim by a subrogee, and (b) that this action is in conflict with and prohibited by the provisions of the Assignment of Claims Act, 31 U.S.C.A. § 203.

The act under which the action is brought provides: " * * * the United States District court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred * * * sitting without a jury, shall have exclusive, jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury * * * in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances * * *."

In passing this act on August 2, 1946, Congress caused a radical change in the law to be made insofar as recovery might be had against the United States by reason of loss or damage caused by the negligence of an officer and employee of the United States. Prior to this act, the only relief in such cases was by either a private relief bill passed by Congress in individual cases, or by an act of Congress consenting that the United States might be sued in the particular case in a particular United States District Court and usually limiting the amount for which judgment could be entered against the United States in the event the plaintiff in the action were successful. Congress no doubt was fully conversant, in considering and passing the act, that it would thereby open up a vast field of litigation against the United States, and potentially greatly increase the expense of the

Government in the payment of judgments which reasonably could be expected to be rendered against the United States in such actions. Therefore, it must be presumed Congress chose the language it employed in the act carefully, and with the purpose and intent of expressing exactly under what circumstances the United States would give its consent to be sued, and by whom the United States gave its consent to be sued. As the statute is a consent to be sued statute on behalf of the United States, in considering the questions presented by the motion, it must be borne in mind that the United States can only be sued by its own consent, United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; that the consent can be manifest only by the Congress of the United States, United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Congress has the right to prescribe the terms and conditions upon which the United States may be sued, Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; that the suit may not be maintained against the United States if not clearly within the statute of consent and the statutes granting the right to sue the United States will be strictly construed, United States v. Sherwood, supra. "The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit conferred beyond what the language requires." Eastern Transportation Co. v. United States, et al., 272 U.S. 675, 47 S.Ct. 289, 291, 71 L.Ed. 472.

In Caledonia Insurance Company v. Northern Pacific Railway Company, 32 Mont. 46, 79 P. 544, 545, the Supreme Court of Montana said: " 'If insured buildings or other property are destroyed through the fault or negligence of some person other than the owner, the insurance company, upon payment of the loss, will be subrogated to the right of the owner to recover from the wrongdoor. * * * The rights of the insurer against the wrongdoer can be no greater than those of the insured, and its recovery will be limited to the amount which it has paid on the loss.' " See also Gaugler, et al. v. Chicago, M. & P. S. Ry. Co., D.C., 197 F. 79.

It does not follow that because the Insurance Company becomes the owner of the insured's cause of action to the extent of the payment made by it to the insured and thus may sue the original tort feasor, that it may sue the United States as the tort feasor, for irrespective of the laws of the State of Montana granting the cause of action no suit may be maintaind upon it against the United States unless the United States has consented to be sued. The Insurance Company claims that the consent is granted by the statute under its express terms, where it is provided that the United States may be sued *"under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred * * * to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances * * *."* (Italics mine.) The contention cannot be sustained when the act in its entirety is considered. The consent to be sued granted by the United States is on account of damage or loss to property caused by negligence of the employees of the United States. By its consent it creates a cause of action that did not exist before. A cause of action is granted to the owner of the property because of his ownership of the property. It accrues in its entirety immediately upon the damage or loss of the property and by reason thereof, and the damage is that sustained by the owner of the property, here Cascade County. The measure of the damage is the value of the property damaged or destroyed. No loss was sustained by the Insurance Company because of the negligent destruction of the property. If the Insurance Company sustained a loss, it was because of the contract entered into between itself and the owner of the property, and no right of action of any kind under the State law accrued to the Insurance Company until it made a payment under its contract to the insured. The recovery sought to be made by the Insurance Company is not for the damage to or loss of the property itself, or the amount thereof, but for the moneys paid out by it to the owner of the property under its contract with him, and its

measure of claimed recovery is not the amount of the damage to or the value of the building, if lost, but the amount of money it paid, even though the loss to the owner of the building, recoverable by him, is in a far greater amount. No right of action is granted by the statute to the Insurance Company at all. Any right of action that it has under the State law it derives from the owner of the property as a result of its contract with him and the payment made and is a portion of the right of action granted to the owner of the property by Congress, which the Insurance Company seeks to prosecute in its own name. The Insurance Company contends that by the use of the words claimant and claimants it is embraced within the statute as one of a class that Congress has consented may sue. The language is not an enlargement of the language preceding it, but a limitation upon it and limits the consent to be sued by the owner only under circumstances where the owner might sue a private person under the law of the State and the liability of the United States to the owner is exactly the same, no greater or no less, as the liability of private individuals under the same circumstances, except that if private individuals under the same circumstances, under the law of the State, would be liable for interest prior to judgment or punitive damages, the United States is not liable. In construing Section 203, Title 31, U.S.C.A., the Assignment of Claims Act, against the United States, the Supreme Court said in National Bank of Commerce v. Downie, 218 U.S. 345, 353, 31 S.Ct. 89, 91, 54 L.Ed. 1065, 20 Ann.Cas. 1116: "It" (the statute) "strikes at every derivative interest, in whatever form acquired, and *incapacitates every claimant upon the government from creating an interest in the claim in any other than himself.*" (Emphasis the Court.) It thus appears that Congress, in using the words claimant and claimants in the statute referred to and meant the original owner of the claim and not one who derives all or a part of the claim from the original owner. The Insurance Company contends that by Section 943, Title 28, exempting specific claims from the operation of the act, Congress manifested its intent that all other claims mentioned therein were within the act, including claims by subrogees under the maxim expressio unius est exclusio alterius, citing Johnson v. Southern Pacific Company, 8 Cir., 117 F. 462. The section does not permit the application of the maxim. Had the section provided that certain claimants could not sue if their loss or damage was caused in the manner set out in any one of the twelve subdivisions of the section, the application of the maxim might be argued, but the section does not so provide. The section specifically provides that consent is not granted for anyone to sue the United States, i. e. become a claimant if the loss or damage is caused by any of the acts of the government employees set out in the twelve subdivisions of the section. It is all inclusive and prevents anyone from suing. The section is one of restriction upon the consent granted by Section 931 and not one of enlargement.

It is urged by the defendant that to permit the action to be maintained by the Insurance Company would violate Section 203, Title 31 U.S.C.A., which provides where material: "Assignments of claims void. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, except as provided in section 204 of this title, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

One of the policies of insurance is attached to the complaint as an exhibit and it is said that all of them sued on are similar as to form, and as a part of the policy it is provided: "Subrogation. This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company."

Thus the policy, by its terms, provides for a subrogation through the voluntary assignment of the claimant of his

854

cause of action to the insurance company. If this provision of the contract is carried out as between the parties and the assignment made, unquestionably it would violate the provisions of the statute. Should the insured, after receiving payment under the contract of insurance, refuse to make the formal assignments, under the doctrine that equity considers that done that ought to be done, the insurer would still be subrogated, which would still result in a violation of the statute, for as said by the Supreme Court in National Bank of Commerce v. Downie, Trustee, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, 20 Ann.Cas. 1116, in considering the statute and its terms: "It would seem to be impossible to use language more comprehensive than this. It embraces alike legal and equitable assignments."

The Insurance Company does not press its right under the contract, but relies upon the law of the State and the decision of the Supreme Court of the State in Caledonia Insurance Company v. Northern Pacific Railway Company, supra, wherein the Supreme Court, in holding an insurer subrogated to the right of the insured upon making payment, in part said: "The next inquiry is was such cause of action assignable? For subrogation is merely an equitable assignment, or an assignment by operation of law". The result arrived at by the Supreme Court of the State was through the construction of Section 1351 of the Civil Code of 1895, now Section 6805, Revised Codes of Montana 1935, which provides: "Transfer and survivorship. A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except where, in the cases provided in the Code of Civil Procedure, it passes to his devisees or successor in office."

In State ex rel. Stiefel v. District Court of the Ninth Judicial District, 37 Mont. 298, 96 P. 337, the Supreme Court of Montana held that under this section an assignment may be made without writing, and if the assignment is, as the State Supreme Court says, merely an equitable assignment or an assignment by operation of law, it is clear that the law is put into operation by the voluntary act of the insured in accepting payment from the insurer, the payment not only operating as a performance on the part of the insurer to the insured under its contract, but also as a purchase of the cause of action the insured might have had against another directly responsible for the loss of the property insured, to the extent of the payment made by the insurer. The Insurance Company relies upon the decisions of the Supreme Court holding that a debt due from the United States to a decedent may be paid to an administrator, Wyman v. United States, 109 U.S. 654, 3 S.Ct. 417, 27 L.Ed. 1068; a debt due from the United States to a minor child may be paid to a guardian, Taylor v. Bemiss, 110 U.S. 42, 3 S.Ct. 441, 28 L.Ed. 64. These cases are not in point as under those circumstances there is no assignment made of the claim. Neither is it an assignment of the claim if the proceeds of the claim are paid to a proper custodian in insolvency or bankruptcy proceedings pending in a competent court for the purpose of paying the debts of the claimant, Butler v. Goreley, 146 U.S. 303, 13 S.Ct. 84, 36 L.Ed. 981; Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749. The Insurance Company relies upon general language of the Supreme Court to the effect that the Section does not embrace cases where there has been a transfer of title by operation of law, Western Pacific Company v. United States, 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951. The language of the Supreme Court is general, but the language of any Court, in its opinion, must be read in the light of the facts of the particular case before the Court and to which all of its language is considered addressed. The facts in that case were that the plaintiff in the action, Western Pacific Company, was the successor in interest of the Western Pacific Railway. Receivers of the property of the said Western Pacific Railway had been appointed in a federal district court in California in a suit brought against it there and the sale was made of the claim by the receivers in said suit pursuant to an order of the court to the plaintiff Western Pacific Company. The operation of law, there, under which title passed, was purely involuntary as far as

the owner of the claim was concerned. It cannot be presumed that by the use of the language the Supreme Court laid down the general rule that all assignments by operation of law are not within the statute. Certainly it cannot be contended that where using the language in any case the Court had in mind an assignment of an action in tort against the United States, as there was no such action in anyone prior to the passage of the Federal Tort Claims act. The Supreme Court has made its meaning clear as to that language in United States v. Gillis, 95 U.S. 407, 24 L.Ed. 503, where it says, in considering the statute: " 'There are devolutions of title by force of law, without any act of parties, or involuntary assignments, compelled by law' to which this statute did not apply." The sale of the property by the receivers appointed by the Court in the action against the Railway Company is an illustration of a devolution of title by force of law without any act of the parties and if it is said that it results in an assignment it is an involuntary assignment compelled by law, but here any title the Insurance Company may have to any part of the County's cause of action, or any assignment it may have is not involuntary or without any act of the parties, but is purely voluntary and comes into operation by reason of the act of the parties to the contract freely and voluntarily entered into between them. The Supreme Court, early in a leading case, stated that one of the reasons for the passage of the statute was to protect the Government from problems arising as a result of the multiplication of the number of persons with whom the United States must deal. Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229. Here the so-called assignment of a portion of the claimants cause of action increases the number of persons with which the government must deal to 72.

It necessarily follows from what is said that the motion of the defendant to dismiss the action of the plaintiff Home Insurance Company, both individually and in its representative capacity should be sustained upon each of the grounds set out in the motion, and, therefore, it is ordered and this does order that the action of the Home Insurance Company against the de-

fendant, both individually and in its representative capacity, be and the same hereby is dismissed.