### DICKINSON v. RILEY, County Treasurer.
### No. 10653.

Circuit Court of Appeals, Eighth Circuit.
Nov. 19, 1936.

J. A. Tellier, of Little Rock, Ark., for appellant.

G. O. Patterson, Jr., of Clarksville, Ark. (E. J. Broaddus, of Wagoner, Okl., on the brief) for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

On January 8, 1932, the Cherokee Public Service Company, was duly adjudicated a bankrupt, and one W. D. Dickinson appellant herein, was in due course elected trustee thereof. Thereafter, one E. L. Riley, appellee herein, as treasurer of Wagoner county, Okl., filed for allowance by the referee in bankruptcy five certain claims for taxes, for the years 1929 to 1933, inclusive. These claims in the aggregate amounted to the sum of $15,857.99. But this aggregate, included the sum of $3,365.42; which had accrued as penalties for delinquencies in the prompt payment of the actual taxes assessed and levied. Both the referee in bankruptcy and the trial court held that no penalties were recoverable; no appeal was taken by appellee, and appellant avows himself as content with the holding, so this appeal is concerned only with the actual taxes claimed namely the sum of $12,492.57.

The referee after a summary, but full hearing, reduced the aggregate of the tax claims to the sum of $8,328.38 and allowed the latter sum to appellee, and fixed the priority of payment in accord with section 64b of the Bankruptcy Act, as amended (11 U.S.C.A. § 104 (b). Upon a petition for review, the District Court modified the order of the referee, as to the amount due and as to priority of payment, and rendered judgment for appellee for the sum of $12,-492.57, the total aggregate of the taxes claimed by appellee to be due, and ordered that the claims be paid "in accordance with the priorities fixed by section 64a of the Bankruptcy Act [as amended, 11 U.S.C.A. § 104 (a)]." From the above orders of the court, the trustee in bankruptcy appealed in conventional form.

The property on which the taxes in controversy were assessed and levied, consisted of a gas distributing plant in the city of Wagoner, Okl., and eighteen miles of eight-inch pipe line, which is laid from certain gas fields to the city of Wagoner. During the five-year period of the accrual of the taxes claimed, the above property had been owned by, and assessed in the names of different owners. But it was owned by the bankrupt when bankruptcy supervened, and no point is urged as to this diverse ownership.

When these tax claims were filed with the referee for allowance the trustee, appellant, appeared and filed so-called objections to the allowance thereof for that: "Said taxes are excessive, unjust and disproportionate; (b) that the physical valuations of the property on which said taxes are based are excessive and erroneous; (c) that either no depreciation, or inadequate depreciation has been allowed on the property assessed during the period for which the taxes are claimed, and the valuations are therefore excessive and erroneous; (d) that the valuation, as a basis for taxation as determined by the return on said property is excessive, unequal and erroneous; (e) that said taxes are otherwise unjust and unlawful."

And for relief prayed thus: "Wherefore, your trustee prays that said matter be set down for hearing at an early date and that upon full hearing thereof said taxes be reduced in such amount as shall be shown to be lawful, just and proper."

Thereupon, the referee issued an order to show cause why these objections should not be sustained. While this order was directed to others than appellee, he nevertheless came in, no point being made as to this notice, and the objections were heard summarily. At this hearing numerous witnesses testified on both sides, without objections, as to the fair cash value and *assessable value* of the property on which the taxes were levied. No other question of fact was mooted. It is conceded throughout the case that the levy of $12,492.57, as claimed, was the correct sum of taxes due upon the basis of the assessed value as fixed by the Oklahoma Tax Commission, and that no part of said sum had ever been paid. But it was and is denied by the appellant, that the property had been "assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale," as provided by the

taxing statute of the state of Oklahoma. Section 13641, Oklahoma Statutes 1931. Appellee contended contra, and toward this dispute of fact the whole of the evidence was directed. As a question of law in the petition for review, appellee then contended that the court of bankruptcy had no power or jurisdiction to go into the question of excessive valuation of the property taxed, but that an irrebuttable presumption of the correctness of such assessment exists. Appellant then and yet contends, contra, and appellee, though never objecting, nor raising the point till he filed his petition for review, is now content.

This question of the power of the court in bankruptcy in such behalf depends on the meaning of section 64a of the Bankruptcy Act, which, so far as pertinent reads thus: "(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in the order of priority as set forth in paragraph (b) hereof * * * upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and *in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court.*" Section 104 (a), title 11, U.S.C., as amended (11 U.S.C.A. § 104 (a). Some diversity of opinion is found among the ruled cases as to the nature and extent of the power conferred on the court in bankruptcy, perforce the quoted language of the subsection, which for emphasis, we italicize. The great weight of authority, as shown by the ruled cases, is in favor of the view that the bankruptcy court is not irrevocably bound by an irrebuttable presumption of the validity and correctness of the assessment made by the taxing authorities; but that the bankrupt court has the power under the plain language of the above statute to hear and determine whether the value at which the property of the bankrupt was assessed was the proper and correct value, as provided by the taxing statutes of the sovereignties, or public entities, which assessed and levied the taxes sought to be allowed in a court in bankruptcy. Cases which hold that such an assessment is prima facie evidence of correctness, but that such evidence may be rebutted in a hearing in the bankruptcy court and modified or overturned, are: In re Clayton Magazines, 77 F.(2d) 852, 854 (C.C.A.2); Whitney v. Dresser, 200 U.S.

532, 26 S.Ct. 316, 50 L.Ed. 584; New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; Henderson County v. Wilkins, 43 F.(2d) 676, (C.C.A.4); Truman v. Thalheimer, 19 F.(2d) 468; (C.C.A.9); In re United Five and Ten Cent Store, 242 F. 1005 (D.C.); In re Simcox, Inc., 243 F. 479 (D.C.); In re Sheinman, 14 F.(2d) 823; 824 (D.C.); In re Williams Oil Corp., 265 F. 401 (D.C.); In re Heffron Co., 216 F. 642 (D.C.); In re Geo. F. Redmond & Co., Inc., 17 F.(2d) 128 (D.C.).

On the other view, that is, that section 64a of the Bankruptcy Act (as amended) confers no power on the bankruptcy court to go behind the findings of value of the state, county, or municipal taxing authorities, we find but one case (In re Gould Mfg. Co. [D.C.] 11 F.Supp. 644). In the latter case, the case of New Jersey v. Anderson, supra, is discussed at much length and distinguished as to what is said therein, construing section 64a, supra, as obiter dictum. There were two questions before the Supreme Court in the Anderson Case; the chief one being, whether the alleged tax was or was not a tax. On this the court divided; the dissenting justices holding that the subject-matter did not constitute a tax. The other was, as to the power of the bankruptcy court to reduce such tax from one based on an assessment of $40,000,000 as fixed by the taxing authorities of the state of New Jersey, to a tax based on a valuation of $10,000,000 as found by the bankruptcy court. In discussing the latter question, the court cites section 64a, supra, and construes it as affording authority for the view that the finding of value by the State Board was not conclusive. The Anderson Case, supra, has been cited by practically every court which has had occasion to construe section 64a, as an authority in favor of the power of the bankruptcy court to revise the findings of the taxing authorities as to the amount of taxes legally due. Among these we find, In re Clayton Magazines, supra (C.C.A.2); Henderson County v. Wilkins, supra (C.C.A.4) and Truman v. Thalheimer, supra (C.C.A.9); each as indicated, a decision by a federal Court of Appeals.

But we content ourselves in merely stating the views of other courts upon the question, without presently ruling it. This for the reason, that appellant agrees with what seems, from the cases above cited, to be the weight of opinion upon the question, and appellee having won below, is content

now and no longer urges his former contention. And so the sole question now presented on the record is, whether upon the evidence heard before the referee the value fixed by the state taxing authorities on the property of the bankrupt was excessive. The brief of the appellee so sets out the only question mooted, and the appellant so stated it on argument.

It is fairly clear that the trial judge, while discussing in his opinion[1] filed in the case, a question of law, in the final analysis bottomed his overruling of the finding of the referee on a question of fact, which was, whether under the evidence taken before the referee, the finding of the state taxing authorities as to the value of the property of the bankrupt was excessive. For he said upon the point this:

"The evidence of Morgan, one of the officials of the bankrupt company, is sufficient, standing alone, to sustain the claimant's contention that the property was assessed at its fair cash value. His attention is called to the assessed value for each of the five years and in each case states, that he thought that was its actual value.

"While I am fully aware of the weight that should be given to the Referee's findings, yet I do not believe that the evidence in this case sustains his findings on questions one and four certified by him to the Court for review."

The rule above referred to by the trial court touching the quantum of deference which should be accorded to the referee's findings of fact by the reviewing court, and by an appellate court, has been but recently considered by this court in a recent case (Rasmussen v. Gresly, 77 F.(2d) 252, at page 254), wherein the rule is thus stated: "The determination of a referee in bankruptcy of issues of fact, based upon the evidence of witnesses appearing in person before him, where such determination must rest upon the credibility of the witnesses and the weight of their evidence, should ordinarily be accepted upon review, except in those cases where it is obvious that the referee has made a mistake. In re Slocum (C.C.A.2) 22 F.(2d) 282, 284, 285; In re Croonborg (C.C.A.7) 268 F. 352, 353; Bank of Commerce & Savings v. Matthews (C.C.A.7) 257 F. 292, 294; In re M. & M. Mfg. Co., Inc., (C.C.A.2) 71 F.(2d) 140, 142; Ohio Valley Bank Co. v. Mack et al. (C.C.A.6) 163 F. 155, 158, 24 L.R.A.(N.S.) 184; In re Wheeler (C.C.A.7) 165 F. 188, 189; In re Miller (D.C.Minn.) 39 F.(2d) 919, 921; In re Hatem (D.C.E.D.N.C.) 161 F. 895, 896; In re Swift et al. (D.C.Mass.) 118 F. 348, 349; Remington on Bankruptcy, vol. 8, § 3871, p. 231. A different rule would virtually make a review of the findings of a referee as to issues of fact which depended for their correctness upon the credibility of witnesses who had personally appeared before him and upon·the weight of their evidence, a trial de novo."

But three witnesses on appellant's part testified before the referee, as to the fair cash value of the property, and one of these, one Curtis, an attorney for the Beggs estate which holds a mortgage on the property for some $35,000, contented himself with saying that the fair cash value of the property as fixed by the witness Morgan "was a little bit high," and more than the witness would personally fix.

The testimony of the witness Morgan was that the valuation fixed by the Oklahoma Tax Commission on the property represented the fair cash value of the property taxed, but that in accord with an alleged custom, the assessable value should have been fixed at only 40 per cent. of such fair cash value. For the existence of this custom the witness relied on a statement made to him by one Cornish, then the engineer of the Oklahoma Tax Commission. This, though it is on the point not material, was denied by Cornish (who was at the time of the trial a member of the Commission) and other witnesses. Nothing is clearer than that the contention of an excessive assessment was based by the witness Morgan, solely on the theory that 60 per cent. had not been deducted from the fair cash value of the property. For he was asked: "I take it, then your objections are that the claims as filed by the Treasurer of Wagoner County instead of reflecting forty per cent. of the actual fair value reflect a value based on one hundred per cent." And the witness answered, "That's correct." It appears from the record that a complaint of the bankrupt to the Tax Commission of its failure to deduct 60 per cent. from actual fair cash value, had been made for each of the years for which the disputed taxes were assessed, but had been unsuccessful, except that once or twice small deductions had been made in value, but never 60 per cent.

---

[1] Not for publication.

It also appears from the testimony of one Johnson who testified for the appellant, that the failure to deduct 60 per cent. from the fair cash value, was the sole point of difference, as between the value fixed by the Tax Commission and the value fixed by this witness.

■ It will be borne in mind that the alleged custom of deducting 60 per cent. from the fair cash value is squarely in the teeth of the taxing statute of Oklahoma, which we have quoted above. Public officers ordinarily cannot adopt a custom which is contrary to the provisions of an express statute. Even if they could, proof of the fact could not be made by hearsay evidence. For the witness Cornish, being at the time he made the alleged statement of the existence of the custom the employee, namely, engineer of the Tax Commission, could not bind the Commission by anything he said, and so his statement to the witness Morgan was pure hearsay. We pretermit discussion of the effect of a proven discrimination by the taxing authorities to an extent that implied fraud might be inferred; because there is not sufficient evidence on which to base such an inference.

■ Therefore, in the light of the statute of Oklahoma which fixes the rule for valuing property for the purpose of taxation, it is fairly plain that the testimony of the witnesses Morgan and Johnson, as the trial court found in effect, instead of supporting the contention of the appellant, was in fact in favor of the appellee. So that there is in the record no evidence to uphold the finding of the referee, save the indefinite statement of the witness Curtis that in his opinion the fair cash value as fixed by Morgan was a "little bit high."

■ Since "the proof of claim is prima facie evidence of the validity of the claim" (In re Clayton Magazines, supra; Whitney v. Dresser, supra) a verified claim when filed, puts the burden on the trustee to overcome by some substantial evidence, the prima facie case thus made. In the absence of any evidence, the rule of deference enunciated by this court in the Rasmussen Case, supra, has, of course, no application.

■ The trial court fell into an error, seemingly through a mere inadvertence, in ruling that section 104 (a) of title 11, U.S. C., as amended (11 U.S.C.A. § 104 (a), governs the priority of payment of the claims of the appellee. The above section in subdivision (a) thereof, provides for priorities before the payment of dividends to creditors in favor of the United States, state, county, district and municipality; but it expressly relegates the order of such priority to the provisions of subdivision (b) of said section 104, supra, which provides that "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (6) taxes payable under paragraph (a) hereof." Therefore the judgment of the trial court should have provided for the payment of these tax claims in full, before the payment of dividends to creditors, but after the payment to each of the five classes, if any, set out in subdivision (b) of said section 104.

We modify the judgment, so as to provide for payment thereof, pursuant to the provisions of section 104 (b) (6) of title 11, U.S.C.A. (11 U.S.C.A. § 104 (b) (6), and as so modified we are of opinion it should be affirmed, with costs, and so it is ordered.