In re KEPP ELECTRIC & MANU-
FACTURING CO.

No. 17286.

United States District Court,
D. Minnesota, Fourth Division.
Jan. 22, 1951.

C. U. Landrum, U. S. Atty., for the District of Minnesota, Alex Dim, Asst. U. S. Atty., and Carl R. Perkins, Sp. Atty., United States Treasury Department, St. Paul, Minn., for the Government.

C. J. Wagner and Charles Halpern, Minneapolis, Minn., for Brace Bennitt.

JOYCE, District Judge.

This matter is before the court on the petition of the United States for review of an order of the Referee in Bankruptcy, dated August 2, 1950, arising out of an arrangement proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. In the order under review the Referee sustained the Receiver's objections to certain tax claims filed by the United States.

The court has read and considered the entire file, heard oral arguments by respective counsel, read and considered the briefs submitted, and concludes that under all of the circumstances of this case, the findings and conclusions of the Referee should be ratified and affirmed and his order approved. This court is in accord with the Referee's conclusion that the debtor's assignment of "any and all tax refunds which may be due or owing to the debtor from the United States government" was not within the purview of Section 203, Title 31, U.S.C.A., and that said assignment was, therefore, valid and effective to vest in the Receiver any rights of the debtor to tax refunds. Furthermore, the court must conclude, as did the Referee, that the confirmed arrangement did not operate to create two taxable entities where before only one had existed, and that the loss sustained in liquidating those assets assigned or conveyed to the Receiver for the benefit of the debtor's unsecured creditors was a loss to the debtor and thus properly entered as such in computing his income and excess profits tax.

The court, therefore, hereby affirms, approves and adopts the Referee's said findings of fact, conclusions of law and order, and orders that the prayer in the petition of the United States be, and is in all things, denied.

HEISEY, Referee.

Referee's Findings, Conclusions and Order Relating to Receiver's Specification of Objection to Tax Claims Numbered 78, 139 and 140.

May 10, 1950.

On October 14, 1949, Mr. Brace Bennitt, as receiver appointed to receive, liquidate and distribute the consideration for the arrangement accepted and confirmed herein, filed a specification of objection to the allowance of claims numbered 78, 139 and 140, filed herein by the Collector of Internal Revenue for certain taxes.

The hearing of the matter was adjourned from time to time to meet the convenience of the parties, until December 15, 1949, when Mr. Bennitt, receiver aforesaid, and his co-counsel Messrs. Charles H. Halpern and Clarence J. Wagner appeared before the Referee, as did Mr. Theo. H. Wangensteen, Assistant United States Attorney, representing the Collector. Certain proceedings were then had which eventuated in the filing with the Referee of a written stipulation of facts on January 16, 1950. Thereafter, on February 1, 1950, the receiver's brief in the matter was filed with the Referee. The Collector's brief was filed with the Referee on February 13, 1950, and the Receiver's reply brief was filed with the Referee on March 4, 1950, since which time the Referee has been endeavoring to find an opportunity to determine the matter, being hard pressed not only by current business, but also by the necessity of determining other matters of antecedent origin which accumulated during the period, lately ended, when the Referee performed duties not only in Minnesota, but in the Southern District of Iowa as well.

It is to be assumed that this controversy arises under Section 64, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4), which provides that debts to have priority, in advance of the payment of dividends to creditors, shall be—"(4) taxes legally due and owing by the bankrupt to the United States * * *: * * * And provided further That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court * * *." 3 Collier on Bankruptcy, 14th Ed., Section 64.407; Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244. The straight bankruptcy provisions of the Act are, of course, applicable to proceedings under Chapter XI thereof, in the absence of inconsistency or conflict. Section 302 of the Bankruptcy Act, 11 U.S.C.A. 702.

No question has been raised in this controversy at any time relating to the legal sufficiency of the specification of objection or to the power and jurisdiction of the bankruptcy court to deal with the problem here presented; and the Referee will undertake to determine the rights of the respective parties in the absence of any such objection and upon the assumption that the receiver's position is that, in denying the relief sought by him, the Federal taxing authorities have acted beyond their legal powers in this particular matter.

The proceeding involved here is not one for reorganization of a corporate debtor (as paragraph 1 of the stipulation of facts tends to suggest), but is one wherein the corporate debtor effected an arrangement or composition with its general, unsecured creditors.

The specification of objection alleges the ground therefor to be, to wit: that the debtor owes nothing to the United States of America because the operation of the co-receivers (appointed by the Court at the inception of this arrangement proceeding) resulted in a loss of $117,463.66 for the period ending February 28, 1946, which loss, if carried back to the period ending February 28, 1945, would extinguish all liability for the taxes sought to be collected under the proofs of claim filed in this proceeding by the Collector, which were given numbers 78, 139 and 140 on the Referee's official claim register.

The Collector filed no written response to said specification of objection. Consequently there are no issues made by the pleadings of the respective parties in interest. Accordingly the separate briefs filed by each party must be examined to determine the issues and the position taken by each party with respect to them.

The briefs filed by the parties manifest confusion, both in respect of the legal issues and of the actual facts involved. However, it is believed that by lifting certain agreed facts from the stipulation entered into by the parties for the purpose of making a record and by taking judicial notice of certain matters shown by the official file covering this arrangement proceeding, a set of facts may be established, to which neither party can have any objection and which will be controlling when the applicable law is applied thereto.

## The Facts.

1. At all the times material herein, debtor was a duly organized corporation, with its plant and principal offices located at Rochester, Minnesota, engaged mainly in the manufacture of electrical appliances and equipment.

2. On November 3, 1945, a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., was filed by debtor with the Honorable Gunnar H. Nordbye, Chief Judge of the United States District Court for the District of Minnesota, for an arrangement whereunder debtor would be permitted to compose the general claims asserted against it by its unsecured creditors.

3. At the time of the filing of said petition, to wit: On November 3, 1945, Judge Nordbye made an order appointing Messrs. Charles F. Dabelstein and Brace Bennitt as co-receivers, vesting said co-receivers with full power and authority (a) to take all of debtor's properties and business into their exclusive possession and control and (b) to conduct and operate the business and properties of the debtor until the further order of the Court. Note: Said co-receivers did not take the title to debtor's properties. Section 236 of Chapter XI of the Bankruptcy Act—11 U.S.C.A. § 636—makes provision for the dismissal of the arrangement proceeding or for the adjudication of the debtor as a bankrupt, whichever appears to be in the interests of the creditors and stockholders, specifying the grounds upon which such action may be taken. Section 70, sub. h of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. h,

provides, in effect that title to the debtor's properties shall not be divested until the arrangement has been set aside and the appointment and qualification of the trustee in the superseding bankruptcy has transpired.

4. Said co-receivers had sole and exclusive charge of and responsibility for the operation of debtor's properties and business from November 3, 1945 to January 10, 1946, both dates inclusive.

5. The original arrangement proposed and filed by debtor at the inception of this proceeding was rejected by its unsecured creditors.

Thereafter, with leave of the Referee, debtor proposed and filed another arrangement, which met with the same fate.

6. Then, on December 21, 1945, with leave of the Referee, debtor proposed and filed another arrangement.

On January 10, 1946, this arrangement was accepted by debtor's general, unsecured creditors and this arrangement will be referred to hereinafter as "the arrangement".

7. Upon the acceptance of the arrangement on January 10, 1946, the operation of debtor's properties and business by the two co-receivers was duly terminated. Debtor then resumed full control of its properties and business and of the operation thereof and ever since has been engaged in its manufacturing business at Rochester, Minnesota.

Contemporaneously with the acceptance of the arrangement, Mr. Brace Bennitt was appointed under a separate order of the Referee to receive, sell, liquidate and distribute the consideration for the arrangement in accordance with the provisions thereof.

On February 27, 1946, pursuant to due hearing, the Referee made an order allowing fees and commissions to the two co-receivers, approving their final report and account and discharging them and their sureties from all further responsibility.

8. In the proposal of the arrangement by the debtor and in the acceptance thereof by creditors, the mutual intention on both sides was that the debtor should be permitted to keep sufficient properties to

enable it to operate and to maintain itself as a going concern; but that in consideration of the arrangement and in composing its general, unsecured indebtedness, debtor should transfer certain specific properties belonging to it (including "any and all tax refunds which debtor may have which may be due or owing to the debtor from the United States government") to a receiver to be appointed by the Court, which the receiver should sell and liquidate, the proceeds of such sale and liquidation to be applied by the receiver—first, to the payment of administrative costs incurred in the proceeding and then to the payment of priority claims (such as claims for wages and taxes), the remaining balance to be distributed ratably among unsecured creditors in satisfaction of their general claims against debtor.

Such an arrangement was not new or unusual. In re Magazine Associates, D.C., 46 F.Supp. 808; Guaranty Trust Company of New York v. McCabe, 2 Cir., 250 F. 699.

9. On February 1, 1946, the arrangement was duly confirmed, pursuant to hearing held and on order of the Referee.

10. On February 1, 1946, debtor conveyed and transferred to the receiver, appointed' to receive, liquidate and distribute the consideration for the arrangement, the properties of the debtor which said receiver was entitled to under the provisions of the arrangement.

These properties were liquidated by said receiver prior to February 28, 1946 for a net total sum of $117,463.66 less than their book value.

If this liquidating deficit of $117,463.77 could be legally included in the Federal income and excess profits tax returns of debtor for the fiscal year ended February 28, 1946, it would extinguish completely all such tax liability for that year and by applying the operating loss carry-back provision, it would extinguish completely all income tax and excess profits tax liability for the fiscal year ended February 28, 1945; and, further, would entitle the debtor to a refund of $2,750.11 paid as the first quarterly payment of income tax for the fiscal year 1945 and $3,950.75 paid as the first quarterly payment of excess profits tax for the fiscal year 1945.

11. On February 1, 1946, the assets retained by debtor for the purpose of maintaining itself in future as a going concern, had a sound net value of $25,000.

12. By the end of debtor's fiscal year 1945, to wit: February 28, 1946, and before an income and excess profits tax return was due for that year, the original co-receivership had ended and debtor had resumed possession and control and operation of its business and remaining properties; and, moreover, debtor was in possession and control of such properties and business, and of the operation thereof, during the entire fiscal year, commencing March 1, 1946 and ending February 28, 1947.

13. During the time or times material here, debtor's fiscal years were, to wit:

March 1, 1945 to February 28, 1946 and March 1, 1946 to February 28, 1947.

Note: Ordinarily returns made on the basis of a fiscal year shall be made on or before the 15th day of the third month following the close of the fiscal year.

14. Debtor made and filed its Federal income and excess profits tax returns for the fiscal years 1945 and 1946.

15. After taking into account all payments, abatements and credits, the net amount of unpaid income tax liability assessed by the Commissioner of Internal Revenue for the fiscal year ended February 28, 1945, upon assessment lists duly received by the Collector of Internal Revenue is, to wit: $7,484.76 plus interest from May 18, 1949.

16. After taking into account all payments, abatements and credits, the net amount of excess profits tax liability remaining unpaid, assessed by the Commissioner of Internal Revenue for the fiscal year ended February 28, 1945, upon assessment lists duly received by the Collector of Internal Revenue is, to wit: $8,948.49 plus interest from May 18, 1949.

17. After taking into account all payments, abatements and credits, the net amount of income tax liability remaining unpaid, assessed by the Commissioner of

Internal Revenue for the fiscal year ended February 28, 1946, upon assessment lists duly received by the Collector of Internal Revenue is, to wit: $34.49 plus interest from July 23, 1947.

18. The claims for Federal taxes filed in this proceeding are numbered in the court file 78, 139 and 140.

19. Mr. Bennitt, as receiver appointed to receive, liquidate and distribute the consideration for the arrangement, exhibited to and filed with the local office of the Internal Revenue Agent in Charge computations which he contends establishes that the debtor's liability for income and excess profits tax for its fiscal years 1945 and 1946 is completely extinguished by an operating loss of $117,463.66 for the fiscal year 1946, which loss appears when the results of the receiver's handling and liquidation of the property to which he received title under the provisions of the arrangement are included in the debtor's return for the fiscal year ended February 28, 1946.

20. The Commissioner of Internal Revenue in computing the debtor's income and excess profits tax liability for the fiscal year ended February 28, 1946, declined to consider any of the operations and activities of the receiver (appointed to receive, liquidate and distribute the consideration for the arrangement), so that the results of the operations of said receiver after he took title to the property on February 1, 1949, as provided by the arrangement, do not enter into and are in no wise reflected in the liabilities claimed to be due from the debtor as stated above, and the receiver filed his objections on October 12, 1949.

21. If the position taken by the Commissioner is correct under the law, then the liabilities claimed as stated above are correct.

22. In its return for the fiscal year ended February 28, 1946, the debtor claimed and was allowed $26,046.09 as a loss resulting from its transfer of assets to the receiver pursuant to the arrangement.

23. There are sufficient funds available in the hands of said receiver to pay the tax claims aforesaid, in the amounts claimed by the Collector.

*Referee's Comments and Conclusions.*

Under the arrangement, Mr. Bennitt, as receiver, is entitled to "any and all tax refunds which debtor may have which may be *due and owing* from the United States government."

The Referee is not undertaking to determine here whether the words above quoted relate only to refunds which were actually due and owing the debtor at the time of the proposal of the arrangement on December 21, 1945, or whether they relate to refunds which should *become* due and owing after December 21, 1945 and more particularly during the fiscal years with which we are here concerned, or whether they relate to refunds due and owing both before and after December 21, 1945, during said fiscal years. If the words of the clause quoted above are ambiguous, the probability would seem to be that the interpretation thereof, to determine what was meant and intended, will require the aid of independent, collateral testimony of witnesses possessing personal knowledge of the negotiations and discussions which occurred directly between debtor's representatives and creditor representatives, leading up to the proposal of the arrangement by debtor and the acceptance thereof by creditors.

So far as it is made to appear here, the arrangement was proposed on December 21, 1945, several months before the expiration of the fiscal year 1945, which did not end until February 28, 1946. Debtor's Federal income and excess profits tax return for the fiscal year 1945 had not been made and filed and it could not possibly be said that there were any Federal tax refunds "due or owing" debtor from the United States at that time.

It does not appear from the stipulation of facts or from the Referee's official file and records that on February 1, 1946, when debtor conveyed and transferred to the receiver the properties constituting the consideration for the arrangement, or at any time thereafter, debtor executed and delivered any such assignment of rights to tax recoveries as would place the receiver in the same position by way of subrogation as the debtor occupied in such matters and

such as would give the receiver the right to deal *directly* with the Federal taxing authorities (rather than through or with the debtor) in relation to tax refunds. The reasonable inference would seem to be therefore that the receiver possesses no such instrument of assignment.

The Referee mentions this subject because it seems inescapable that all of the rights Mr. Bennitt possesses as receiver, appointed to liquidate and distribute the consideration for the arrangement, stem (a) from the arrangement itself and (b) from the statutory position he occupies.

With reference to the first proposition, to wit: the rights conferred upon the receiver by the arrangement: It must be remembered that the United States of America, as a priority claim holder, is in no sense a party to the arrangement, which affects only general, unsecured creditors and that under the provisions of the arrangement the receiver acquired no *direct* rights as against the United States of America. Thus it follows that if debtor is entitled to any tax recoveries from the United States of America in or for the fiscal years with which we are here concerned, whatever right the receiver has in that regard can be exercised only as against the debtor to compel the debtor to turn over to the receiver the proceeds of the tax recoveries effected by the debtor.

As to the second proposition, to wit: the rights conferred upon the receiver by the statute which creates the position he occupies: Mr. Bennitt, as the receiver appointed to administer the consideration for the arrangement, owes his office in that capacity to the authority granted by Section 337 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 737, which provides, in substance, that after the acceptance of an arrangement, the bankruptcy judge or referee shall appoint some person to receive and distribute, subject to the control of the court, the moneys and consideration, specified in the arrangement and by certain provisions of Chapter XI, which are required to be deposited by the debtor.

It is at once evident that from the time of his appointment and qualification as such receiver, Mr. Bennitt actually has had nothing whatever to do with the operation of debtor's business and properties. According to the plain statutory intendment, he is and has been what might be termed a receptacle or depositary in which the benefits, flowing to general, unsecured creditors from the arrangement, are to be placed for liquidation and distribution, including all tax refunds realized by the debtor and embraced within the consideration for the arrangement.

And in his capacity as such receiver, he is neither a representative of debtor's creditors nor the agent of the debtor. He is merely a statutory creature devised to serve the purposes and functions specified in the section of the statute authorizing his appointment and creating his office.

As illustrating the receiver's lack of rights and powers, the arrangement provides: "Debtor hereby consents to the retention of jurisdiction by the court until the provisions of this arrangement, after its confirmation, have been fully performed."

This means (a) that under Section 377 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A., § 777 if the debtor defaults in any of the terms of the arrangement, the bankruptcy court, upon hearing after notice to debtor and the creditors, has the power either to dismiss the proceeding, thus stripping the protective cloak afforded by the bankruptcy court from the debtor, or adjudging the debtor a bankrupt, thus placing the debtor at the end of the road and (b) that the receiver has no authority whatever with respect to the enforcement of performance of the provisions of the arrangement, except perhaps to make a formal written report of the default to the bankruptcy court, for such action thereafter as is authorized by the statute.

It is altogether plain that such a receiver has no duty or right incidental or in any way relating to the debtor's income and excess profits tax return situation, for it is only a receiver who has possession and control over and who *operates* the properties of a debtor in such a way as to *derive income therefrom* who has any standing

or obligation with respect to income or excess profits tax liability. See Louisville Property Co. v. Commissioner of Internal Revenue, 6 Cir., 140 F.2d 547, certiorari denied 322 U.S. 755, 64 S.Ct. 1268, 88 L.Ed. 1584, rehearing denied 323 U.S. 810, 65 S.Ct. 30, 89 L.Ed. 646; United States v. Metcalf, 9 Cir., 131 F.2d 677, certiorari denied 318 U.S. 769, 63 S.Ct. 761, 87 L.Ed. 1140; Pinkerton v. United States, 7 Cir., 170 F.2d 846; State v. American Bonding and Casualty Company, 225 Iowa 638, 281 N.W. 172, and the numerous authorities cited and analyzed therein.

The two *operating* co-receivers, appointed by the Court at the inception of this proceeding, did not owe their office to the provision of Chapter XI creating the office of a trustee, receiver or other person to receive the consideration for the arrangement, but to Section 2, sub. a (3) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a (3) investing the bankruptcy court with jurisdiction to appoint receivers to take charge of properties, which is made applicable to proceedings under Chapter XI by Section 302 of said Chapter, 11 U.S.C.A. § 702, which provides that the straight bankruptcy provisions of the Act shall, in so far as they are not inconsistent with or in conflict with the provisions of Chapter XI, apply to proceedings under Chapter XI.

In all the facts and circumstances of this case, the Referee concludes that the specification of objection filed herein to tax claims numbered 78, 139 and 140 cannot be sustained and accordingly

It Is Ordered That the receiver's specification of objection shall be and it hereby is overruled and dismissed.

The Referee hereby retains and reserves the power, jurisdiction and right to reopen and to further hear this matter and to amend, modify or vacate the foregoing findings, conclusions and order upon written application of either party in interest made within 10 days from date hereof, in the event there are further facts or arguments which either party may care to present.

Additional Findings of Fact and Amendatory Conclusions and Order relating to Receiver's Objections to Tax Claims numbered 78, 139 and 140.

August 2, 1950.

On May 10, 1950, the Referee made findings, conclusions and an Order relating to the Receiver's objections to tax claims numbered 78, 139 and 140, filed by the Collector of Internal Revenue in above proceeding. For reasons which appear in the "Referee's Comments and Conclusions" which preceded said Order, the Referee retained and reserved the power and jurisdiction to reopen and further hear this controversy and to amend, modify or vacate said original findings, conclusions and order upon written application therefor made either by the Receiver or by the Collector in the event there should be further testimony and evidence or arguments which either party desired to present.

On May 16, 1950, the Receiver filed a petition for rehearing which was entertained by the Referee who fixed May 31, 1950 as the date upon which the controversy should be further heard. However, by agreement of the parties, an adjournment was taken to June 15, 1950 when the Receiver, Mr. Brace Bennitt, appeared with his co-counsel Messrs. Charles H. Halpern and Clarence J. Wagner. Mr. Theo. Wangensteen, Assistant United States Attorney, appeared for the Collector. Certain further proceedings were then had and a further adjournment was agreed upon.

On June 30, 1950 the Receiver and his co-counsel aforesaid appeared. Messrs. Carl Perkins and Theo. Wangensteen appeared as counsel for the Collector. Certain further proceedings were then had and the Receiver introduced the testimony of three witnesses, as the transcript of this adjourned hearing will show.

Pursuant to the rehearing aforesaid, the Referee hereby reaffirms the findings of fact numbered 1 to 23 inclusive, made as of May 10, 1950, and now makes the additional findings of fact later appearing herein.

### I.

The Collector contends that that part of the arrangement under which debtor

transferred unliquidated tax refund claims to the Receiver, is null and void and in that connection cites Section 203 of Title 31 of the United States Code Annotated, R.S. § 3477, which provides: "All transfers and assignments made of any claim upon the United States * * *, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, *after the allowance of such a claim,* the *ascertainment of the amount due, and the issuing of a warrant for the payment thereof."* (Italics ours.)

In Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749, it was held that the order of a judicial tribunal having jurisdiction of the parties, appointing a receiver of a claim against the government and directing that the claimant assign the same to the receiver, to be held subject to the order of the Court for the benefit of those entitled thereto, cannot be regarded as prohibited by the foregoing section. At pages 419 et seq. of 173 U.S., at page 437 of 19 S.Ct. of its opinion, the Supreme Court sets forth the foregoing statute, as well as citations to its previous decisions, including its opinion in (a) Erwin v. United States, 97 U.S. 392, 24 L. Ed. 1065, where it was pointed out that this statute was designed to prevent frauds upon the Treasury; that it does not embrace cases where there has been a transfer of title by operation of law, and that "The passing of claims to heirs, devisees, or assignees in bankruptcy are not within the evil at which the statute aimed * * * " and (b) in Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229, where the question was whether this statute embraced voluntary assignments for the benefit of creditors, concerning which the Court said: "There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the government can be embarrassed by such an assignment. The claim is not specifically mentioned, and is obviously included only for the just and proper purpose of appropriating the whole of his effects to the payment of all his debts. We cannot believe that such a meritorious act as this comes within the evil which congress sought to suppress by the act of 1853."

In National Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 93, 54 L.Ed. 1065, Gamwell & Wheeler, a business firm, assigned to several banks as security certain unallowed claims against the United States which were for moneys due from the Government to the debtor firm for materials it had furnished the Government. Subsequently the debtor firm fell into bankruptcy. In the bankruptcy proceeding, the banks asserted lien claims. The Supreme Court held that under the statute the assignments were nullities and said: "The result (is) that when Gamwell & Wheeler were adjudged bankrupts they were still in law the owners of these claims on the United States, and *all interest therein passed under the Bankrupt Act to their general creditors,* to be disposed of as directed by the bankrupt act, just as if there had been no attempt to transfer them to the banks." (Italics ours.)

And in Western Pacific R. Co. v. United States, 268 U.S. 271, 45 S.Ct. 503, 505, 69 L.Ed. 951, it was held that the statute does not apply to a transfer of claims through a judicial sale under a court order. The Supreme Court said: "In Price v. Forrest, supra, * * * it was specifically held that this section did not apply to the assignment of a claim to a receiver under the order of a court, this being 'the act of the law.' So here the sale to the claimant of so much of the claims as had accrued to the receivers for transportation * * * was clearly a transfer by operation of law and did not come within the prohibition of the statute."

In the instant arrangement proceeding, the transfer of tax refund claims by debtor to the receiver occurred pursuant to and in accordance with the arrangement, authorized by Chapter XI of the Bankruptcy Act, between the debtor and its general unsecured creditors, the arrangement having been duly accepted by debtor's unsecured creditors and duly approved and confirmed by the bankruptcy

court. Thus the transfer constituted "an act of the law" and is valid, not being within the prohibition of the statute cited and relied upon by the Collector.

## II.

So far as the Referee can now recall, the Collector has never questioned the jurisdiction of the bankruptcy court over this controversy; and while it may well be that in the circumstances shown in the record, the Collector is deemed to have consented to such jurisdiction, Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97, coupled with the fact that the Collector filed the three tax claims (now in controversy) in this proceeding, nevertheless it would seem that the proposition of the power of the court under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, to reduce the amounts of or to disallow the tax claims aforesaid, may subsequently be raised if a review is taken, since such power, if it does not legally exist, cannot usually be conferred by consent, unless in this particular proceeding it can be held that in all the facts and circumstances shown in the record the power arises incidental to the equity jurisdiction of the bankruptcy court, as distinguished from jurisdiction at law conferred by specific statutory provisions.

In Dickinson v. Riley, 8 Cir., 86 F.2d 385, 387, it is said: "The great weight of authority, as shown by the ruled cases, is in favor of the view that the bankruptcy court is not irrevocably bound by an irrebuttable presumption of the validity and correctness of the assessment made by the taxing authorities; but that the bankrupt court has the power under the plain language of the above statute to hear and determine whether the value at which the property of the bankrupt was assessed was the proper and correct value, as provided by the taxing statutes of the sovereignties, or public entities, which assessed and levied the taxes sought to be allowed in a court in bankruptcy. Cases which hold that such an assessment is prima facie evidence of correctness, but that such evidence may be rebutted in a hearing in the bankruptcy court and modified or overturned are (citations).

In Dickinson v. Riley, supra, there is cited State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, where one of the questions was whether the bankruptcy court had the power to reduce a tax from one based on an assessment in a certain amount as fixed by the State taxing authorities to a tax based on the valuation assessed by the bankruptcy court. In this connection, our Court of Appeals states: "In discussing the latter question, the court cites section 64a, supra, and construes it as affording authority for the view that the finding of value by the State Board was not conclusive. The Anderson Case, supra, has been cited by practically every court which has had occasion to construe section 64a, as an authority in favor of the power of the bankruptcy court to revise the findings of the taxing authorities as to the amount of taxes legally due."

Then our Court of Appeals states: "But we content ourselves in merely stating the views of other courts upon the question, without presently ruling it. This for the reason, that appellant agrees with what seems, from the cases above cited, to be the weight of opinion upon the question".

The subject of the power of the bankruptcy court to determine "any question arising as to the amount or legality of any tax" is discussed at length at pages 2143–2167, Section 64.407, Collier on Bankruptcy, 14th Ed. The authors point out that until the decision in Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, 45 Am. Bankr.Rep., N.S., 462, the great weight of authority was that the bankruptcy court had full power to examine into the validity and amount of taxes constituting the basis for priority claims in bankruptcy, and to withhold the payment of such claims to the extent that it found that the underlying taxes exceeded what was justly due and owing.

At page 2159, Vol. 3, Collier on Bankruptcy, it appears that during the consideration of the 1938 Chandler Act, cognizance was taken that some Federal Courts had

shortly theretofore adopted the view that Section 64, sub. a does not authorize a court of bankruptcy to exercise any power with reference to tax claims, except that of determining the validity or legality of the taxes under the applicable law. In note 36, at the bottom of page 2159, appear excerpts from the transcripts of the House and Senate hearings, showing that the Witness Hunt called the attention of the Judiciary Committee of both bodies to the trend of court rulings on the subject and proposed an amendment which, if enacted, would make it plain that a bankruptcy court possessed the power not only to determine the validity or legality of the tax, as tested by the applicable law, but, in addition, to determine the amount justly due and owing in the particular facts and circumstances in any case where the bankrupt either had not initiated proceedings to revise or reduce the amount of the taxes for factual reasons or where the bankrupt had initiated such proceedings but the rights of the bankrupt in the matter had not been finally adjudged by a competent tribunal having jurisdiction. The authors of Collier on Bankruptcy state that the amendment "apparently was dropped in the final revision" of the 1938 Chandler Act.

Then in December, 1940, the U.S. Court of Appeals for the Eighth Circuit affirmed the denial of a petition by State taxing officials, in a railroad reorganization proceeding under Sec. 77, 11 U.S.C.A. § 205, to dismiss the trustee's application for certain relief with respect to ad valorem taxes which had been assessed on the debtor's properties. The amount of the taxes had been determined upon due hearing by the Arkansas Corporation Commission under the local law and such determination had become final for want of a seasonable appeal. In re Missouri Pac. R. Co., D.C.E.D. Mo., 33 F. Supp. 728, 43 Am. Bankr.Rep., N.S., 141, affirmed Arkansas Corporation Comm. v. Thompson, 8 Cir., 116 F.2d 179, 44 Am.Bankr.Rep., N.S., 536. The decision of our Court of Appeals in the case was reversed by the Supreme Court of the United States, and the authors of Collier on Bankruptcy, as a result of their analysis of the opinion rendered by the Supreme Court in the matter, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244, have this (in part) to say as to the effect of the decision:

"It would now appear settled, however, that where a duly constituted quasi-judicial agency, state or federal, has passed upon a tax claim by virtue of a due hearing thereon, the bankruptcy court cannot redetermine such claim or alter its amount, unless (1) the agency has made an improper arithmetical computation or (2) has acted beyond its legal powers or (3) the assessment has been tainted by discernible illegality under the applicable tax law as distinguished from a mere over-assessment based on an excessive valuation. Further than this, however, light is needed. * *

"Nor was there any solution of the problem as to whether or not the trustee is concluded by the acts or omissions of the bankrupt where a quasi-judicial agency has not passed upon the tax claim. * * *

"It would seem, therefore, that until the point has been squarely decided by the Supreme Court, the weight of authority still prevails that the bankruptcy estate may obtain a revaluation where the assessment is clearly shown to be grossly excessive and the assessment has not progressed beyond the stage where a tax assessor or some similar officer, not acting in a quasi-judicial capacity, has made the determination. * * *"

In Baumann v. Sheehan, 8 Cir., 140 F.2d 747, 749, a 77B, 11 U.S.C.A. § 207, proceeding was involved wherein the liquidating trustee filed a petition for authority to pay the Collector for the City of St. Louis real estate taxes in such amounts as the bankruptcy court should deem fair and equitable, the allegation of the petition being that the assessments of the real property of the debtor were based on excessive values. The trial court found that the assessments were grossly excessive and reduced the amount of the taxes. On appeal, the jurisdiction of the bankruptcy court to reduce the assessed valuations was challenged. The appellate court cited Section 64, sub. a of the Bankruptcy Act, as well as Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85

L.Ed. 1244, and then pointed to the applicable Missouri tax statutes, stating:

"A valuation fixed by the tax officials will not, under the decisions of the Missouri appellate courts, be interfered with in equity unless it is so grossly excessive as to be inconsistent with an exercise of honest judgment, or so unequal and discriminating as to violate the fundamental law of the land. * * *

"In the exercise of its equitable jurisdiction, the lower court, sitting as a court of bankruptcy in the State of Missouri, had the same power to hear the case presented by the petition in this case as a Missouri Court of equity would have had. If a Missouri court of equity would not have had power to act, neither would the court of bankruptcy. If the rule were otherwise, it would make the bankruptcy court a 'super-assessment tribunal' over the state taxing agencies, which broad power was not intended to be conferred by Congress."

See also Commonwealth of Pennsylvania v. Aylward, 8 Cir., 154 F.2d 714 to same effect.

In Re Monogahela Rye Liquors, Inc., 3 Cir., 141 F.2d 864, 867, a straight bankruptcy proceeding was involved, superseding a Chapter X 11 U.S.C.A. § 501 et seq., proceeding which had failed. The Commonwealth of Pennsylvania filed proofs of claim for capital stock, corporate loan and corporate income taxes over a five year period, based on estimates of liability which had been made by the Pennsylvania Department of Revenue. The bankruptcy trustee objected to these claims and asked for their redetermination by the Bankruptcy court under Sec. 64 of the Act, alleging, inter alia, that the corporation loans subject to tax were much less than the amount shown on the proofs of claim; that the claims for tax on corporate loans and net income were excessive and that the income and capital stock taxes were based on arbitrary assessments. The appellate court considered the opinion in Arkansas Corporation Commission v. Thompson, 313 U.S. 312, 61 S.Ct. 888, 85 L.Ed. 1244, *the context and substance of Section 64 as it existed prior to enactment of the Chandler Act and as it was rewritten in connection* *with the enactment of Chandler Act, and related Sections of the Bankruptcy Act,* and said: "(1) Generally speaking, therefore, we think that a bankruptcy court has the power to redetermine tax claims in the exercise of its jurisdiction under the Chandler Act. But we also think that certain factual determinations in respect of such claims, when competently made in another forum, may be conclusive at a hearing thereon in a bankruptcy court. Such we believe is indicated by a comparative reading of the decisions in [State of] New Jersey v. Anderson and Arkansas Corporation Commission v. Thompson, supra. * * *"

See also In re Aero Services, D. C., 75 F. Supp. 347, holding that where the time for objection to county tax assessments on personal property of the debtor had not expired prior to filing of a petition in an arrangement proceeding and there had been no final order on the tax, the Referee in Bankruptcy had jurisdiction to pass upon the amount of the tax under Section 64 of the Bankruptcy Act.

Referring to the facts which have been stipulated by the parties to the case now at bar, no essential or necessary information is shown therein which gives the Referee an intelligent or comprehensive understanding of the circumstances forming the basis of and surrounding the taxes now claimed to be due and owing.

The only statement of conceded fact therein appears to be: "The claims for Federal taxes filed in this proceeding are numbered in the court file 78, 139 and 140". From this the Referee assumes that said proofs of claim may be deemed to be part of the record in this matter.

The Referee has examined said proofs of claim and, as will be pointed out in paragraph IV hereof, there are no facts alleged in any of these proofs of claim which give the Referee a proper understanding of the historical background of each item of tax indebtedness alleged therein. The Referee is left to surmise as to when, how, and on what basis the items were arrived at. From all that appears, he assumes that the various amounts prayed for in the three proofs of claim mentioned

are predicated upon assessments made by the Commissioner of Internal Revenue. If that be the case, and the Referee assumes that it is, an assessment by the Commissioner of Internal Revenue is only presumptively or prima facie correct and can be rebutted. Willcuts v. Minnesota Tribune Co., 8 Cir., 103 F.2d 947; Western Express Company v. United States, 8 Cir., 141 F. 28; Paschal v. Blieden, 8 Cir., 127 F.2d 398; Dickinson v. Riley, supra.

If, for any reason, debtor's liability to pay the taxes shown in said three proofs of claim has become final to the extent that it could be contended by the Collector in this controversy in good faith that a determination of the matter by the bankruptcy court is foreclosed, either by operation of certain provisions of the Internal Revenue Code or Treasury Department Rules and Regulations or by virtue of a previous adjudication by some Federal taxing authority or body acting in a quasi-judicial capacity, it would seem that all such matters are purely defensive and should have been pleaded in a formal response by the Collector to the Receiver's objections or at least should have been urged properly and efficiently upon the original hearing or upon the rehearing herein. Failure to do so should amount to a waiver by the Collector of any such defenses.

In all premises aforesaid, the Referee concludes that the bankruptcy court has the power and jurisdiction to revise and to reduce the amounts of taxes shown in the three tax claims to which the Receiver has filed objections, should justice and equity require it.

Counsel for the Receiver called the attention of the Referee upon the rehearing of this controversy to Section 274, Title 26 U.S. Code which provides: "Upon adjudication of bankruptcy of any taxpayer in any bankruptcy proceeding * * *, any deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) determined by the Commissioner in respect of a tax imposed by this chapter upon such taxpayer shall * * * be immediately assessed if such deficiency has not theretofore been assessed

in accordance with law. * * * Claims for the deficiency and such interest, additional amounts and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy * * * proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Board * * *."

The Referee's attention at said time was also called by said counsel to Sec. 29.274–1 of Treasury Department Regulation 3 which provides, in substance, that "As used in these regulations, the term bankruptcy proceeding includes proceedings under Chapters I to VIII of the bankruptcy act as amended or under Sections 74, 75, 77 or 77B or under Chapters 10 to 13 of such act as amended [11 U.S.C.A. §§ 1 et seq., 202, 203, 205, 207, 501–1086]."

An analysis of the statement of facts, coupled with an examination of the faces of the three proofs of claim herein involved, has caused the Referee to place greater reliance upon Section 64 of the Bankruptcy Act for justification of the power that may be exercised in this matter, since it is not at all clear to the Referee that in respect of all of the tax items shown in said three proofs of claim, the Commissioner acted in pursuance of Sec. 274 of the Internal Revenue Code.

## III.

### Additional Findings and Conclusions.

(a) In the proposal, preparation and drafting of the provision of the arrangement relating to the transfer to a receiver of certain properties of the debtor, including "any and all tax refunds which debtor may have which may be due and owing to the debtor from the United States government", it was the purpose and intention of all the parties who conferred together in that regard and who participated therein, to wit: debtor's duly authorized representatives and the duly authorized representatives of certain general, unsecured creditors, and it was the design of the provision aforesaid, that in the event the arrangement so proposed and drafted should be accepted and confirmed and thereby become effective, the consideration for

the arrangement should and would include and embrace, among other things, all tax claims of every kind and description that debtor had against or · upon the United States at the time of petition filed on November 3, 1945 and that debtor should thereafter have, arising either in connection with debtor's tax liabilities in its fiscal years which had terminated prior to the inception of the arrangement proceeding or in its fiscal years during which its business and plant were being conducted and operated and its properties sold and liquidated in the course of the arrangement proceeding.

(b) As a result of the rehearing herein and an analysis of the testimony introduced thereat, it is now perfectly clear to the Referee that by virtue of the provisions of the arrangement the Receiver occupies the position of an assignee with respect to all tax claims of the debtor against or upon the United States arising during the period above mentioned, that the Receiver possesses the same rights incidental to relief and recoveries with respect to debtor's federal tax liabilities during said period as the debtor would have possessed in the absence of the assignment clause in debtor's arrangement and that the Receiver's rights with relation to such tax matters stems, in the main, from the provisions of the arrangement itself, as approved and confirmed by the Referee in this arrangement proceeding.

■ Ordinarily in an arrangement proceeding, as a condition precedent to confirmation of the arrangement, the debtor is required to deposit with the Receiver appointed in the proceeding the amount of. its priority tax debts, Sections 337 and 361 of the Bankruptcy Act in combination–11 U.S.C.A. §§ 737 and 761. Here the debtor transferred to and deposited with the Receiver certain assets, to be liquidated and reduced to money, providing in its arrangement that such moneys should be applied by the Receiver to the payment of debtor's tax debts among other things. See finding No. 8 as well as the original arrangement of which judicial notice is taken. Thus there was a substantial compliance with the statutory provisions, supra.

In pursuance of this feature of the arrangement, the Collector of Internal Revenue at St. Paul, acting for the United States, filed tax claims numbered 78, 139 and 140 in this arrangement proceeding and obviously looked to the Receiver for payment thereof. In the last sentence of each such proof of claim, the Collector specifically calls attention to R.S. § 3467, 31 U.S.C.A. § 192, regulating the personal liability of an "assignee" who fails to pay the claims of the United States in accordance with their priority.

■ It appears to be undisputed that under the provisions of the arrangement, the Receiver is obligated to pay said claims and this fact, coupled with the fact that the Receiver occupies the position of an assignee, as heretofore stated, gives the Receiver the right to the relief and to the recoveries he now seeks, provided the proof herein is such as to clearly demonstrate he is entitled thereto. In these circumstances, the Receiver appears to be the only party who is in position to assert such rights. If the debtor were to assert them, an objection that the debtor was not the proper party to do so in view of the valid assignment to the Receiver would doubtless be sustained.

The Referee concludes that the Receiver has the right to claim the relief and recoveries he seeks under the objections filed to said tax claims.

## IV.

(a) According to the stipulation of facts and referring to the Referee's original finding No. 13 predicated thereon, debtor's fiscal years for tax purposes commenced March 1 and ended February 28 in each year.

The Referee assumes that debtor's fiscal year 1944 commenced March 1, 1944 and ended February 28, 1945 and that debtor's fiscal year 1945 commenced March 1, 1945 and ended February 28, 1946. These would appear to be the only two tax years with which we are here concerned.

(b) Tax Claim No. 78 shows on its face *only* that the debtor is indebted to the United States in the principal sum of $18,430.10

for "income taxes under the Internal Revenue Code", as follows:

June 400128–45L 1944........ $10,220.82
June 410149–45L 1944........ 8,209.28

Note: On the face of the proof of claim, there is nothing to show and there has been no testimony or evidence introduced to indicate whether these taxes represent delinquent unpaid income taxes payable in accordance with debtor's income tax return for 1944 or whether the amounts represent assessments, additional amounts or additions to the tax imposed by the Commissioner subsequent to the filing of debtor's income tax return for 1944.

(c) Tax claim No. 139 shows on its face that the debtor is indebted to the United States for:

Add'l EP taxes Per end 2/28/45 $14,490.52
Add'l Income taxes Per end
2/28/46 .................. 5,188.80
Add'l EP taxes Per end 2/28/46 4,890.63
Add'l unemployment taxes for
the year 1945 .............. 81.09

(d) Tax claim No. 140 shows on its face that the debtor is indebted to the United States in the sum of $647.49 for "income taxes under the Internal Revenue Code", as follows:

Oct. 410101–46L fiscal year ended
2/28/46 ..................... $647.49

(e) A tabulation of the tax items shown on the face of the three tax claims aforesaid produces the following results:

Thus, according to the proofs of claim, the unpaid income taxes total $18,430.10 and the unpaid excess profits taxes total $14,490.52 *for the year 1944,* said taxes totalling $32,920.62.

Referring to paragraphs 15 and 16 of the Referee's original findings, the parties apparently have stipulated that the *actual* amount of unpaid income taxes for the year 1944 (as per assessments) is $7,484.76 and that the *actual* amount of the unpaid excess profits taxes for that year (1944) is $8,948.49 as per assessments.

Then, according to the proofs of claim, the unpaid income taxes amount to $5,836.29 and the unpaid excess profits taxes amount to $4,890.63 *for the year 1945,* said taxes together totalling $10,726.92.

Referring to paragraph 17 of the Referee's original findings, the parties apparently have stipulated that the *actual* amount of the unpaid income taxes for the year 1945 (as per assessments) is $34.49. In the stipulation (on which said original findings are based), no reference is made to unpaid excess profits taxes for that year or to unpaid unemployment taxes for that year (1945). And it is not at all clear to the Referee whether the amounts claimed in proofs of claim numbered 78 and 140 relate to "assessments" or to original unpaid delinquent income taxes which were not paid by debtor seasonably in accordance with its original income tax returns for 1944 and 1945.

| Claim | Year | Income Taxes | Excess Profits Taxes | Unemployment Taxes |
|---|---|---|---|---|
| 78 | 1944 | $10,220.82 | | |
| 78 | 1944 | 8,209.28 | | |
| 139 | 1944 | | $14,490.52 | |
| 139 | 1945 | 5,188.80 | | |
| 139 | 1945 | | 4,890.63 | |
| 139 | 1945 | | | $81.09 |
| 140 | 1945 | 647.49 | | |

## V.

In the specification of objections filed by the Receiver, it is alleged (A) that debtor is not justly and truly indebted to the United States in any amount whatever and (B) that if the loss of $117,463.66 for the period ending February 28, 1946 is properly carried back to the fiscal year ending February 28, 1945, *all net taxable income* would be eliminated.

It would appear that somewhat in line with the foregoing, the parties stipulated

(as set forth in paragraph 10 of the Referee's original findings) that

(a) if the liquidating deficit of $117,463.-77 could be *legally* included in the federal income and excess profits tax returns of the debtor for the fiscal year ended February 28, 1946 (which would be 1945), it would extinguish completely *all* tax liability for that year and

(b) by applying the operating loss carry-back provision, it would extinguish completely all income and excess profits tax liability for the fiscal year ended February 28, 1945 (which would be 1944) and

(c) would entitle debtor to refund of the amounts of the first quarterly payments of income and excess profits taxes for the year 1945, to-wit: $2750.11 and $3,950.75 respectively.

It would seem that, in so stipulating, the parties had mainly in mind income and excess profits taxes, and may not have had in contemplation the 1945 employment tax item, amounting to $81.09. Accordingly the Referee intends to treat said unemployment taxes as being outside the stipulation.

As to the refunds mentioned in clause (c), supra, the receiver has objected only to the final allowance of the three tax claims herein mentioned. Therefore, for that reason (if for no other), this controversy should not embrace the matter of the refunds specified in the latter part of said original finding numbered 10, unless by said stipulation the parties mutually intended to submit that phase of the matter for determination by the Referee. In the absence of any clear understanding of the situation on his part, the Referee assumes that he is bound by the limitations appearing in the receiver's specification of objections.

As to clauses (a) and (b), supra, the Referee infers that the word "legally" was intended to be applicable to both clauses— in other words, to both situations portrayed in said clauses.

At this point attention is specifically directed to pages 4 et seq. of the brief filed herein by the United States. The government's contention appears to be that when the termination of the operation by the two original co-receivers of debtor's business and plant and the transfer and assignment to the receiver of the consideration for the arrangement occurred contemporaneously on February 1, 1946, such a separation transpired in this arrangement proceeding that the debtor was then and thereby completely divorced from further control by the bankruptcy court, the assets transferred and assigned to the Receiver, the unsecured creditors whose claims against debtor were composed under the arrangement and the receiver appointed to administer the arrangement, and that said Receiver thereby "lost the continuity of taxable entity with the debtor essential to permitting the tax consequences of his activities to be included with or to affect those of the debtor."

This case, like every other one, possesses its own particular or peculiar facts and circumstances, which are determinative of the issue thus presented.

The official file and record in this arrangement proceeding show (and the Referee takes notice thereof and finds) that said proceeding is still pending before the Referee; that no final decree has been entered therein as required by Section 372 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 772, and that by paragraph IV of the arrangement, debtor specifically "consents to the retention of the jurisdiction of the court, until the provisions of this arrangement, after its confirmation, have been fully performed." And as the record in the instant controversy shows, the arrangement has not been fully performed as yet and the receiver is still functioning under the provisions of the arrangement. Thus, debtor remains subject to the jurisdiction of the bankruptcy court, to the same extent as was the case at the inception of this arrangement proceeding.

As stated heretofore, all tax claims of every kind and description that debtor had against or upon the United States at the time of petition filed and that debtor should thereafter have arising either in connection with debtor's tax liabilities in its fiscal years during which its business and plant were being conducted and operat-

ed and its properties sold and liquidated in the course of this arrangement proceeding were assigned by debtor to the Receiver at the time the arrangement was confirmed.

With respect to tax claims against or upon the United States, this fact or circumstance would seem to place the Receiver in the shoes of the debtor and in the same position as the debtor from the standpoint of a taxable entity.

Further, the Referee finds that the arrangement (of which notice is taken) provides that from the proceeds of the sale and liquidation of the consideration for the arrangement and before any distribution of such proceeds shall be made by the Receiver for the benefit of debtor's unsecured creditors, the Receiver shall pay "all taxes in full due and owing to the United States of America, * * * and all other tax claims that may be filed and allowed in this proceeding".

Thus it becomes perfectly obvious that debtor not only assigned its rights to tax recoveries to the Receiver but also required the Receiver to assume all of its tax liabilities—in other words, debtor placed the Receiver in the same position that the debtor occupied with reference to such recoveries and liabilities.

The general rule (which has its exceptions, of course) is that estoppel or inconsistency cannot be asserted against the United States; but it would appear to be permissible to observe that while a priority tax claimant usually is not deemed an essential party to a proceeding under the Bankruptcy Act, nevertheless here the situation created by the provisions of the arrangement is such that it might be well said that at the time the United States filed its tax claims herein, the United States must have been cognizant of the provision of the arrangement requiring the Receiver to pay all tax claims in full and that in filing its tax claims in the circumstances, the United States became a direct party in interest in this proceeding and submitted generally for all purposes to the power and jurisdiction of the bankruptcy court, sitting as a court of equity.

As Chief Judge Gardner of this Circuit pointed out in Baumann v. Sheehan,

supra, a bankruptcy court in a matter of this character sits as a court of equity. In no case cited in paragraph II hereof does it appear that the Court or the parties to the litigation concerned themselves with any phase or phases of Federal or State tax laws, rulings, practice, procedure and proceedings, other than where the determination of the amount of the taxes had become res adjudicata before the proceeding under the Bankruptcy Act was initiated. The Referee has searched the books for authority (and has found none) where, in determining the amount of taxes under Section 64 of the Act, the court took any such matters into account, with the exception stated above. It seems to follow, therefore, that a bankruptcy court, sitting as a court of equity, is required and has the duty to determine the amount that is *justly* due in the particular or peculiar facts and circumstances of any case. Here it would seem particularly inequitable and especially unjust to debtor's unsecured creditors that under the provisions of this arrangement, the United States should receive payment in full by the Receiver of the amount of taxes claimed when, in fact, the undisputed liquidating deficit aforesaid, if taken into account, renders the demands of the United States upon the Receiver wholly unwarranted.

Accordingly, It Is Ordered:

1. That the Order made by the Referee herein on May 10, 1950, overruling and dismissing the Receiver's specification of objections to tax claims numbered 78, 139 and 140, shall be and it hereby is vacated and set aside;

2. That the Receiver's specification of objections to said tax claims shall be and it hereby is sustained except as to the employment tax item, to wit: $81.09 in claim numbered 139.

3. That with the exception of the employment tax item aforesaid, said tax claims and each of them shall be and they hereby are disallowed.

The foregoing order is made without prejudice to the right of either the Collector or the Receiver to seasonably apply for a further reopening and a further rehearing of this controversy, in the event it appears

to either party that the record herein should be amplified or that the Referee has misinterpreted any part or portion of the agreed stipulation of facts entered into by them; and to that end the Referee hereby reserves and retains power and jurisdiction accordingly.