In the Matter of Gerald SEGAL, Individually and d/b/a Segal Cotton Products.

In the Matter of Sam SEGAL, Individually and d/b/a Segal Cotton Products.

In the Matter of SEGAL COTTON PRODUCTS, a Partnership composed of Gerald Segal and Sam Segal, Bankrupts.

Nos. 4951–4953.

United States District Court
N. D. Texas,
Dallas Division.
Aug. 26, 1963.

———◆———

Henry Klepak, Dallas, Tex., for bankrupt.

William J. Rochelle, Jr., Dallas, Tex., for trustee.

DAVIDSON, District Judge.

The controversy in this case grows out of a Certificate of Review to this court by Honorable Elmore Whitehurst, Referee in Bankruptcy at Dallas, Texas.

 The question presented, in short, is, Does a carryback tax item under

Title 26, 172 of the Revised Annotated Statutes belong to the Trustee for the benefit of creditors, or does it go to the bankrupt?

The Referee held that it belonged to the Trustee, notwithstanding the opinion in the Sussman case in the Third Circuit, 289 F.2d 76. We adopt in part the Certificate of the Referee and the quotations there made by him as follows:

"In the Sussman case the court conceded that the 'unfortunate result' of its ruling was a windfall to the bankrupt at the expense of the creditors and commented:

" 'The fact that the very business losses which destroyed normal capacity to pay creditors have led to the tax rebate, makes it particularly unfair that this fund should be beyond the reach of the bankrupt's creditors. Thus, the normally satisfactory provisions of Section 70, sub. a, have inequitable consequences in this very special situation. But we cannot correct this. Such a matter requires a legislative solution.'

"The facts in the case at bar cannot, in my opinion, be distinguished from those of the Sussman case, and if that case was correctly decided then the bankrupts here and not the trustee are entitled to these refunds. * * * I am persuaded by the arguments advanced against it that Sussman was incorrectly decided. Therefore, I have declined to follow it, and have ruled that these refunds are assets of the bankrupt estates. * * * "

The Referee continues:

"I should like to add, however, that in Texas a contingent claim is transferable by assignment. Moser v. Tucker [87 Tex. 94], 26 S.W. 1044, 1045; Wheeler v. Riviere [Riviere, Tex.Civ.App.], 49 S.W. 697, error refused. Accordingly, these claims were vested in the trustee as of the filing of the bankruptcy petitions by section 70a(5) of the Bankruptcy Act unless they were non-assignable by reason of being claims against the United States. The Court of Appeals thought that they were non-assignable for this reason, but as pointed out in the articles above referred to, two United States Supreme Court decisions to the contrary were not referred to and it can only be presumed that they were not called to the attention of the court and hence overlooked. These cases are Erwin v. United States, 97 U.S. 392 [24 L.Ed. 1065], and National Bank [of Commerce of Seattle] v. Downie, 218 U.S. 345 [31 S.Ct. 89, 54 L.Ed. 1065]."

Our view of the case is that of the Referee. Indeed, Judge Hastie, in the closing words of his opinion in the Sussman case, manifestly felt that the strict interpretation of the statute, as he viewed it, tended to smother the spirit of the law and to stand aside the urging of the principles of equity and fair play. We agree with Judge Hastie that the opinion does result in an injustice to the creditors. We think there is a better way of solving the problem.

Justice Cardoza in Martin v. National Surety Co. et al., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, leaves open the door for a more satisfactory light upon the question:

" * * * the statute must be interpreted in the light of its purpose * * *. An assignment ineffective at law may none the less amount to the creation of an equitable lien * * *. It would be a strange construction of the statute that would make it necessary for the Government to declare the equities illusory when they serve its own good."

The syllabus in the Martin case, Section 2 thereof, clearly sums up the effect of the decision:

"2. The provisions of R.S., § 3477; 31 U.S.C. 203, declaring all assignments of any claim upon the United States 'absolutely null and void' unless made after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof, are provisions for the protection of the Government, and not

284

for the regulation of the equities of claimants growing out of irregular assignments, when collection is complete and the Government's liability ended. P. 594."

The court in this case says in the Opinion:

"We conclude that Martin's interest in the fund was correctly held to be subordinate to the interests of other claimants."

The Sussman decision, which is in conflict with the Referee's holding, we find is ably discussed and criticized in the Journal of the National Association of Referees in Bankruptcy, issue of October 1962, page 116, from which we quote:

"The admittedly inequitable consequences of the Sussman decision resulted from an incorrect application of section 70(a).

"The court reasoned that the carryback claim could not be an existing property interest at the time the petition was filed because section 172 of the Internal Revenue Code bases carryback refunds upon net operating losses for the taxable year. The bankrupt could not have presented his claim until nearly seven months after his petition was filed. However, his inability to present his claim when the petition was filed should not, in itself, prevent the claim from vesting in the trustee, for it is possible to have an existing interest in property without having an immediate right to enjoy that property. For example, one who holds a note payable at the end of the year has an existing property interest even though he has no immediate right to collect the debt. * * *

"The Sussman court's conclusion that the right itself did not come into existence until the end of the taxable year must have been based upon the uncertainty of the claim rather than its immaturity, for the court assumed that the bankrupt could possibly earn enough during the remainder of the year to offset his losses and eliminate the availability of a carryback. Several cases involving claims of far greater uncertainty make it clear that a contingent claim can vest in the trustee. In the leading case of Williams v. Heard [140 U.S. 529, 11 S.Ct. 885, 35 L.Ed. 550] the bankrupt's award for losses caused by the activities of British-built Confederate cruisers was held to have vested in the trustee even though the bankrupt had no enforceable claim at the time of bankruptcy and it seemed unlikely that he ever would have such a claim. The Court reasoned that the bankrupt did have a right to compensation at the time he was adjudicated a bankrupt even though he then had no remedy. In determining that this particular inchoate claim was sufficiently in existence to vest in the trustee the court relied upon the test laid down by Justice Story in Comegy [Comegys] v. Vasse [1 Pet. 193, 7 L.Ed. 108]. * * * If the Sussman court had applied this test, it would have found that the carryback claim was an existing property interest; for, if the bankrupt had died at the time the petition was filed, it is clear that his administrator could have claimed the refund for the benefit of the estate.

"The Sussman court further reasoned that, even if the claim was an existing property interest, it was not the type of interest which can be transferred or levied upon, as required for it to vest in the trustee under section 70(a)(5) of the Bankruptcy Act, because the Federal Anti-Assignment Statute forbids the assignment of unallowed claims against the government. However, the Supreme Court decided in Erwin v. United States [97 U.S. 392, 24 L.Ed. 1065] that the Anti-Assignment Statute does not prevent such claims from vesting in the trustee in bankruptcy."

The author of the article in the magazine cites authorities thus:

"An immature carryback claim was held to be assignable under ch. XI arrangement proceedings in the case of In re Kepp Elec. & Mfg. Co., 98 F.Supp. 51 (D.Minn.1951). The debtor assigned all his claims for tax refunds to a receiver for the benefit of the unsecured general creditors. * * * There is no apparent reason why a claim which is sufficiently in existence to be assignable under ch. XI proceedings should not be sufficiently in existence to vest in the trustee under § 70(a).

"Since the Sussman case arose in Pennsylvania it may be significant that the Pennsylvania courts have held that contingent remainders are subject to execution and do vest in the remainderman's trustee in bankruptcy. E. G., In re Packer's Estate, 246 Pa. 116, 92 Atl. 70 (1914) (bankruptcy); De Haas v. Bunn, 2 Pa. 335 (1845) (execution). In the Dorgan case, ([D.C.] 237 Fed. 507), supra, the court said: 'Such interest is a property right—contingent, it is true, as to the amount and value thereof, and subject to be entirely defeated, but nevertheless a property right * * * The trustee, or purchaser from him, simply stands in the shoes of the bankrupt, receiving something, or possibly nothing, ultimately; but it is a right which should have a value, and, having a value, under the policy of the law, in case of bankruptcy, it passes to the trustee for the benefit of creditors. *The whole policy of the Bankrupt Act is that all nonexempt property of the bankrupt * * * shall be subjected to the payment of the debts of the bankrupt.*' 237 Fed. at 509. (Emphasis added.)"

█ The general purpose and policy of the Bankruptcy Act, from its incipiency has been, and is that all property of the bankrupt shall be subject to the payment of his debts. As suggested by the authorities quoted, had the bankrupt died solvent, his legal representative should and would have listed his claim and collected it. Nowhere else could the fund have gone except to his estate, if he had been solvent. Since he is insolvent, it must go to his creditors.